[No. 1529.]

## JAMES NESBITT, RESPONDENT, *v.* THE DELAMAR'S NEVADA GOLD MINING COMPANY, A CORPORATION, APPELLANT.

MINING CLAIMS—ASSESSMENT WORK—WHO AUTHORIZED TO DO WORK. Work done by a mere trespasser or stranger to the title will not inure to the benefit of the locator, but, when the mine is represented by an owner, and annual work is performed by or at the instance of the owner or some one in privity with him, it is sufficient.

IDEM—IDEM—EFFECT OF ACTS OF CONGRESS OF 1893 AND 1894. The recording of the prescribed notice under the special acts of congress of 1893 and 1894, suspending the requirements of section 2324 of the Revised Statutes as to the annual labor on mining claims, has the same legal effect as the performance of such labor.

IDEM—IDEM—IDEM—FORFEITURE. Plaintiff, under the belief that he had secured the interest of two of the three original locators of a mining claim by a purchase under an execution sale, filed notices in 1893 and 1894, at the instance of the other original locator, who recognized plaintiff as a tenant in common, that they intended in good faith to hold and work said claim, which notices were by special acts of congress, passed in 1893 and 1894, accepted in lieu of the annual assessment work required by Rev. Stats. U. S. 2324. In 1895 defendant located his mine, the boundaries of which took in

part of plaintiff's claim: *Held,* that the prior claim had not been forfeited or rendered subject to relocation, and hence defendant's claim was invalid in so far as it overlapped the first claim.

IDEM—VALID TITLE NOT REQUIRED TO OBTAIN BENEFITS OF ACTS OF CONGRESS OF 1893 AND 1894. Under special acts of congress passed, respectively, in 1893 and 1894, substituting the filing of a notice that the locators, in good faith, intended to hold and work a mining claim, in lieu of the annual assessment work required by Rev. Stats. U. S. 2324, persons need not have a valid claim to the mining ground claimed, in order to entitle them to file such notices.

IDEM—QUIETING TITLE—INTEREST OF THIRD PARTIES. A judgment quieting title to mining lands in favor of one of the original locators and his coclaimants, as against defendant, whose relocation was invalid, because the claim was not subject to forfeiture, cannot be attacked by defendant on the ground that the coclaimants' alleged title was in other parties, since that is a question to be decided among plaintiffs, which in no way affected defendant's right to the property.

## ON REHEARING.

QUIETING TITLE—TENANTS IN COMMON—ACTION FOR BENEFIT OF ALL. Where a complaint alleges that plaintiff and his coöwners are in possession as tenants in common, and prays that the title be quieted in him and his cotenants, the action is not for the benefit of plaintiff alone, but for himself and his cotenants.

UNITED STATES LAND OFFICE PROCEDURE—NOTICE BY ONE JOINT CLAIMANT—ADVERSE CLAIM. A notice of adverse claim to a mine may be filed in the United States Land Office by one of several joint claimants, on behalf of all, without having a power of attorney from his coclaimants.

IDEM—MINING PATENT—WAIVER. In proceedings in the United States Land Office to obtain a patent to a mine, all adverse claims not filed within the prescribed time are waived.

TITLE UNDER EXECUTION SALE—COLOR OF TITLE. Under Gen. Stats. 3253, providing that the purchaser of real estate under execution sale acquires all the title of the judgment debtor, and requiring a certificate of sale to be given, the certificate shows color of title in the purchaser.

APPEAL from the District Court of the State of Nevada, Lincoln county; *G. F. Talbot,* District Judge:

Action by James Nesbitt against The Delamar's Nevada Gold Mining Company, a corporation, to quiet title to mining claim. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

The facts sufficiently appear in the opinion.

*Henry Rives* and *T. J. Osborne,* for Appellant:

I. The defendant contends that there never was any action pending between J. Nesbitt & Bro. and either DeBeck

or Stevens because nothing was legally done to institute such an action except to file the complaints with the justice, for two reasons: First, because the summonses were issued on the 12th day of May, 1893, before any affidavit for obtaining an order for their publication had ever been made or filed, and they, having been issued and made returnable on that day for a period more than ten days after their issuance, were in excess of the jurisdiction of the justice, and void; and, secondly, because the affidavits filed for the purpose of obtaining an order for the publication of the summonses are totally insufficient and void. (*Paul* v. *Armstrong*, 1 Nev. 82; *Paul* v. *Beegan*, 1 Nev. 327; *Roy* v. *Whitford*, 9 Nev. 370; *Little* v. *Currie*, 5 Nev. 90; *Ricketson* v. *Richardson*, 26 Cal. 149; *Braly* v. *Seaman*, 30 Cal. 610; *Forbes* v. *Hyde*, 31 Cal. 342; *Victor M. & M. Co.* v. *Justice's Court*, 18 Nev. 21; *Coffin* v. *Bell et al.*, 22 Nev. 169.)

II. Where a justice's court acts without jurisdiction, its judgment is a nullity, not voidable, but void. And the question may be raised at any time and anywhere. (12 Am. & Eng. Ency. p. 400–401; *Hart* v. *Sansome*, 110 U. S. 152; *Earl* v. *McVeigh*, 91 U. S. 398.)

III. The act of November 3, 1893, provides "that the claimant or claimants of any mining location, in order to secure the benefits of this act, shall cause to be recorded in the office where the location notice or certificate is filed, on or before December 31, 1893, a notice that he or they, in good faith, intend to hold and work said claim." Under the facts and law it cannot be denied but that the plaintiff in this section never had, nor has he now, any valid "*claim*" in, to or concerning said mine. Nor has his brother, George Nesbitt, ever had any valid "*claim*" to any portion of this mine. First—Because all of the muniments upon which they could base any shadow of claim were and ever have been void, and, secondly, because their pretension in the case of a two years adverse occupation, the period of limitation on mines, is not pretended to have been exercised, or held or enjoyed continuously for two years prior to the entry of the defendant on the 1st day of January, 1895. Even if plaintiff's certificates of sales, followed by his deeds from the special constable, ever constituted "color of title," they can-

not avail him in this case, because color of title can only aid
in such instances to eke out, add to, or build up a prescrip-
tive title, and no such title is pretended to have been shown
in this case.

IV.   The defendant contends that the "claimant or claim-
ants" mentioned in the statute must certainly mean those
who, during the year 1893, had a *legal*, or at least, an equi-
table, claim upon the premises described in the exemption
notice, and it cannot be contended in this case that the plain-
tiff or his brother either had, during 1893 or in 1894, any
*legal* or *equitable* claim to the Fraction Mine.

V.   An absolute nullity as a void deed or judgment will
not constitute color of title, and the Statute of Limitations
will not run in favor of a person under it.   (*Bernal* v. *Gleim*,
33 Cal. 668; 1 Am. & Eng. Ency. p. 288, notes, and cases
cited; *Moore* v. *Brown*, 11 How. U. S., book 13, L. C. P. Co.
756.)   And a void deed will not connect grantee with grant-
or's possession, nor will it constitute the basis of an action.
(*People* v. *Klunke*, 41 Cal. 264; *Welton* v. *Palmer*, 39 Cal. 456.)

VI.   There is another principle involved in this case which
demonstrates the error of the district court, and this princi-
ple arises from the following conditions, viz:   First—It might
be admitted that the plaintiff neither has, nor ever had, any
valid title to the Fraction Mine.   Second—It is admitted
that the most he is entitled to claim under whatever title he
has shown amounts to only "color of title."   Third—And
only having a color of title, uncoupled with prior *actual* pos-
session, and having failed to establish, and not pretending in
this case that he did establish, any actual or adverse occu-
pation for the statutory period of two years, or in fact for
any period, his "color of title" can avail him nothing.
Fourth—We find that the premises were mineral lands of
the United States, presumably open to location by Davidson
& Murphy, and certainly open to such location unless the
plaintiff's notice of exemption from assessment work for the
years 1893 and 1894 withdrew the land from location on
January 1, 1895.   Fifth—If the notices filed by the plaintiff
in the years 1893 and 1894 operated to maintain the claim
as a valid subsisting mining claim, it probably did so, not
only for the plaintiff himself, but for his brother and for

Burth, and, if it did so for Burth, it preserved it for DeBeck and Stevens, and the plaintiff, not having shown any equitable, prescriptive or other legal title to the interests held by DeBeck and Stevens, their interests remained intact because the plaintiff has shown no legal successors to their interests, and hence the inconsistency of the court in quieting a title in the plaintiff which never existed.

VII.   Defendant submits that the court, by its judgment, has quieted the title in the plaintiff, which never existed, and which title, if it exists to-day at all, is still in DeBeck and Stevens, and with which title the plaintiff has shown neither a legal nor an equitable connection, and neither of them being parties to this action, that title cannot be affected by this action, nor can it be quieted in a party who is a stranger to it, and especially it cannot be quieted in favor of such stranger as against a *bona fide* prior occupant, claiming under a color of title superior to that set up by the plaintiff.

*George S. Sawyer*, for Respondent:

I.   All of the proceedings in the cases of *Nesbitt* v. *DeBeck and Stevens* were valid, and, if not sufficient, their deficiency cannot be inquired into in this action by entire strangers to the proceedings.   The cases in Nevada, referred to in appellant's brief, were cases between the parties or their privies. (*Pennoyer* v. *Neff*, 95 U. S. 721; 43 Cal. 643; 33 Cal. 506; 34 Cal. 391; 37 Cal. 458; 44 Cal. 356–465; 65 Cal. 396; 12 Am. & Eng. Ency. of Law, 148 J. and note.)

II.   The appellant admits in its brief that an attachment levied on a mining claim would be such a right as could be protected from forfeiture, and that in this· case, even if no judgments had been rendered; but the certificates of sale gave an equitable color of title, and the deed gave color of title which could ripen into title, and could therefore be protected as against strangers.   (26 Am. & Eng. Ency. of Law, p. 40, *et seq.*, notes and cases cited; *Tryon* v. *Huntoon*, 67 Cal. 325; *Field* v. *Columbet*, 4 Saw. 523; *Hall* v. *Law*, 102 U. S. 466; *Wilson* v. *Atkinson*, 77 Cal. 485.)

III.   That the Nesbitts claimed title in good faith from the time the property was sold to them is not disputed; and that Burth recognized them as his cotenants and coöwners

from the time of the sale, is equally indisputable and undisputed. Thus they were all "claimants" within the meaning of the act of congress of July 18, 1894 (Stats. 1893-94, p. 114), which was a copy of the act of November 3, 1893. (Morrison's M. Rights, 87; Lindley on Mines, sec. 633.)

IV. Burth, for whom this action was brought, as well as the other coöwners, was an original locator, and has always done everything required to preserve his rights. He located the claim, caused the notices to be recorded, and performed his share of the work, always in connection with the Nesbitts, whom he recognized as his coöwners, and kept the Fraction mining claim intact. His interest certainly was never forfeited, and, consequently, the Fraction mining claim was not forfeited. All presumptions are against forfeiture. To establish a forfeiture, the law must be beyond cavil, and the evidence beyond doubt. (Lindley on Mines, sec. 645, and cases cited in notes.)

*Henry Rives* and *T. J. Osborne*, Attorneys for Petitioner for Rehearing:

I. A deed, under certain circumstances, although invalid, constitutes a "color of title," but a certificate of sale cannot be said to have that force or effect, however valid it may actually have been; and how much less than "color of title" did these certificates constitute when they are admitted to have been originally, and are still, void and invalid?

II. We contend that it was the intention of congress, in passing the acts of 1893 and 1894, where it has used the words "claimant or claimants," to have intended that "claimant or claimants" should only include locators of mines and their legal successors in interest, and that the word "claimant" only embraces one person who may have located a mine, and that "claimants" is intended only to include a number of persons who may have jointly located a mine, or who may have jointly succeeded to the legal title. In instances where various parties may have made various and separate locations of the same mine, the word "claimants" would only embrace those who had made these separate locations, some of which might be valid and the others invalid. Still the "claimants" of the invalid title would derive no

benefit from the filing of the notice, while the owner of the real and superior title would be the only "claimant" whose filed and recorded notice would avail anything.

III.   In its opinion in this case this court properly decides that "this action was brought   *   *   *   pursuant to section 2325 of the Revised Statutes of the United States."   Now section 2326 of the Revised Statutes of the United States provides in such cases that "after judgment shall have been rendered, the party entitled to the possession of the claim *   *   *   may, without giving further notice,   *   *   *   file a certified copy of the judgment roll with the register of the land office,   *   *   *   and a patent shall issue thereon for the claim."   Now, let us suppose that the plaintiff pursues this course, as he certainly will, and while he may have an imperfect title, and in fact while the real title may clearly appear in another, still he obtains a patent under such a judgment as has been rendered in this case, not that he has the real or best title, but simply because his claim to the ground may be *better* than that of the defendant.

IV.   To prevent such a result, congress on the 3d day of March, 1881 (21 U. S. Stats. 505), passed the following special act, which provides:   "That if, in any action brought pursuant to section 2326 of the Revised Statutes, title to the ground in controversy shall not be established by either party, the jury shall so find, and judgment shall be entered according to the verdict,   *   *   *   and the claimant shall not proceed in the land office or be entitled to a patent for the ground, until he shall have perfected his title."   This act seems to have been passed with special reference to exactly such cases as this, and we think it cannot be seriously contended that plaintiff has "established title to the ground in controversy," however superior it may be to that of the defendant.

V.   The plaintiff was compelled on the trial to establish the validity of the location made by DeBeck, Stevens and Burth, in order to, if possible, show he had regularly succeeded to the same; but in this he has failed, although he may have demonstrated that the title of the locators is still alive through his notices, etc.   Suppose this court refuses to prescribe the "legal value" of the plaintiff's title, but, in the

face of the facts and the last quoted statute, quiets the title in him, what will the unjust result be? He will proceed to obtain his patent, and when the holders of the real and manifestly *legal* title—DeBeck and Stevens—sue him to obtain their rights, he will shield and cloak himself behind the plea of a prescriptive title, by showing that he has held adversely to them under " color of title " since the date of his fraudulent deeds on February, 19, 1894.

VI. If this court is of the opinion that the title to the Fraction Mine was kept alive by the notices filed by the Nesbitts *alone* in 1893 and 1894, then it must conclude that the relocation by Davidson and Murphy was invalid; but this conclusion does not warrant, or in the slightest degree justify, the court in quieting the title in the plaintiff and his brother, unless they have " established " a valid title in themselves.

By the Court, Bonnifield, J.:

W. M. Davidson filed his application in the United States Land Office at Carson City for a patent to the Sleeper Mine, situated in Ferguson mining district, Lincoln county, and the plaintiff filed in said office a protest against the issuance of such patent and an adverse claim to that portion of the Sleeper Mine embraced within the boundaries of the Fraction Mine, claiming said Fraction Mine for himself and his alleged coöwners, George Nesbitt and A. Borth, as tenants in common.

This action was brought by the plaintiff against said W. M. Davidson, pursuant to section 2325 of the Revised Statutes of the United States and section 1900 of the General Statutes of Nevada, to determine the right of possession to the Fraction Mine.

The case was tried before the district court in and for said county without a jury. A judgment was given in favor of said plaintiff and his cotenants. A notice of motion for new trial was given and statement on motion made by W. M. Davidson, the defendant. Before said motion was heard, Delamar's Nevada Gold Mining Company was substituted for said Davidson as defendant. The motion was denied. The appeal is taken from the judgment and from the order denying a new trial.

The notice of motion for new trial designates as grounds thereof: First—Insufficiency of the evidence to justify the judgment and that the judgment is against law. Second— Errors in law occurring at the trial and excepted to by the defendant. The court made no express findings. One of the specifications of error is that the judgment is not supported by the evidence. The inquiry then is presented: Is there substantial evidence to support the judgment?

The evidence shows that W. DeBeck, H. Stevens and A. Borth located the Fraction Mine on the 12th day of May, 1892, and that they performed all the acts required to make a valid location; that the Nesbitt Brothers and A. Borth did assessment work in each of the years 1895, 1896 and 1897 to the full amount required by law; that the Sleeper Mine was located on the 1st day of January, 1895, and the boundaries thereof take in the Fraction Mine; that no work was done on the Fraction Mine in either of the years 1893 and 1894, but that the Nesbitt Brothers in December of each of said years had a notice recorded in the county recorder's office where the original notice of the location of the Fraction Mine was filed, declaring their intention in good faith to hold and work said mine.

The plaintiff claimed that he and George Nesbitt, his brother, had acquired all the right, title, interest and claim of said W. DeBeck and H. Stevens in and to the Fraction Mine, and that they and A. Borth were the owners of said mine as tenants in common. In support of this claim he offered in evidence a judgment recovered by the Nesbitt Brothers against said W. DeBeck for $212 in the justice's court of Pioche township in Lincoln county, and a judgment recovered by them against said H. Stevens on the same day and in the same court for $160, together with all the records, papers and proceedings of said court in said cases, to the introduction of which counsel for defendant objected on several different grounds, and the court excluded them on the ground, in effect, that the record showed that the justice's court had not acquired jurisdiction over either defendant in either of said cases.

It appears that on the 15th day of July, 1893, the justice's court issued an execution on each of said judgments and

specially deputed A. J. Denton, pursuant to the provisions of section 571 of the civil practice act, to serve the same; that on the 11th day of August next following, said special officer sold to the Nesbitt Brothers all the right, title and interest of said DeBeck and Stevens, respectively, in and to the Fraction Mine under and in pursuance of the commands of said executions; that on said last date said officer executed to the Nesbitt Brothers a certificate of said sales, respectively, and filed a duplicate copy thereof in the office of the county recorder on the 19th day of August, 1893; that on the 19th day of February, 1894, said officer executed to the Nesbitt Brothers deeds of conveyance of the said interest of DeBeck and Stevens, respectively, in said mine, no redemption having been made. The certificates and deeds were admitted in evidence, against the objections of the defendant, but for the purpose only of showing or as "tending to show color of title and adverse possession."

Counsel for appellant contends and his theory is, in effect, that said judgments being void, the certificates of sale and the deeds executed to the Nesbitt Brothers are void and do not tend to show color of title or adverse possession to said Fraction Mine; that all acts done by the Nesbitt Brothers with reference to said mine are nugatory and can avail the plaintiff nothing in this action; that they acquired no right to file said notice in 1893, nor in 1894, because the certificates of sale gave no right of entry upon the Fraction Mine, and that said deeds gave no right to such entry; that the original locators of the Fraction Mine having failed to perform the required annual labor for the years 1893 and 1894, and having failed to file any notice of intention to hold and work the mine, as required by the acts of congress in that respect, and the Nesbitt Brothers not having taken actual possession until the fall of 1895, the mine had been forfeited and was subject to relocation when the defendant and James Murphy located the Sleeper Mine.

The vital question in this case is whether the said notices the Nesbitt Brothers caused to be recorded, of their intention to hold and work said mine, had the legal effect of saving the mine from being subject to relocation for any period of time. In determining this question it is not necessary to consider

what legal value said certificates of sale and deeds may have, if any, except as evidence tending to show the good faith of the Nesbitt Brothers and their coclaimant, A. Borth, in all they did with reference to said mine.

The evidence discloses that, from the date of said sales, A. Borth regarded the Nesbitt Brothers as having acquired all the interests of DeBeck and Stevens in said mine, and that the Nesbitt Brothers and A. Borth mutually recognized each other as coöwners of said mining claim as tenants in common; that upon consultation and agreement between them, and at the request of A. Borth, the Nesbitt Brothers had said notices recorded in lieu of performing the annual labor; that said notices were recorded for the benefit of all three and to represent said mine; that in all things done in the premises all of said claimants acted in good faith and in the belief that the Nesbitt Brothers acquired all the right, title and interest of DeBeck and Stevens in and to said mine by virtue of said judgments, and sales made thereunder.

If the Nesbitt Brothers at the instance of A. Borth, and in pursuance of an agreement between them and him, had in good faith performed one hundred dollars' worth of labor or improvements on said mine in 1893 and 1894, pursuant to the provisions of section 2324, U. S. Revised Statutes, certainly the mine would not have been subject to relocation on the 1st day of January, 1895, although it might turn out on judicial investigation that the Nesbitt Brothers had no legal or equitable title to any interest therein. Such labor would have represented the mine, and defeated any relocation made in 1895. It is true that work done by a mere trespasser or stranger to the title will not inure to the benefit of the locator. (*Little Gunnel M. Co.* v. *Kamber,* 1 Morr. Min. Rep. 536.) But when the mine is represented by an owner, and annual work performed by or at the instance of the owner or some one in privity with him, it is sufficient. (2 Lindley on Mines, sec. 633.)

Evidently it was the intention of congress, in passing the special acts of 1893 and 1894, suspending the requirements of section 2324 of the Revised Statutes as to the annual labor on mining claims, that the recording of the prescribed notice should have the same legal effect as performing the labor.

The act of 1893 provides  *  *  *  "that no mining claim which has been regularly located and recorded as required by the local laws and mining regulations shall be subject to forfeiture for non-performance of the annual assessment work for the year eighteen hundred and ninety-three; *provided*, that the claimant or claimants of any mining location, in order to secure the benefits of this act, shall cause to be recorded in the office where the location notice or certificate was filed on or before December thirty-first, eighteen hundred and ninety-three, a notice that he or they in good faith intend to hold and work said claim." The act of 1894 was the same in terms as the act of 1893, except the year of 1894 was substituted for the year 1893.

The Fraction Mine being represented by one of the locators, A. Borth, and said Nesbitt Brothers having had said notices recorded, in pursuance of said agreement and at the instance of said Borth, as well as of themselves, and under the honest belief of all three that the Nesbitt Brothers had legally acquired all the right, title and interest of the other two locators by virtue of said judgments and sales made thereunder, we are of opinion that said mine had not been forfeited nor subject to relocation when the location of the Sleeper Mine was made, and, therefore, that the location of the Sleeper Mine was and is invalid in so far as it covers the Fraction mining claim.

The contention of counsel that, in the sense of said Statutes of 1893 and 1894, " the claimant or claimants " authorized to secure the benefits of said acts, must have a valid claim to the mining ground claimed, is not, in our opinion, tenable. In case of conflicting locations of the same mining claim, the respective claimants are both required to perform the annual labor, and in 1893 and 1894 they were both required to do the required assessment work, or cause the prescribed notice to be recorded in lieu thereof, yet in no such case could both have a valid claim to the same mine.

Counsel contends that the judgment is against law in that it quiets the title in the plaintiff, which title they allege " never existed and which title, if it exists at all, is still in DeBeck and Stevens, and with which title the plaintiff has shown neither a legal nor an equitable connection, and neither

of them (DeBeck and Stevens) being parties to this action, that title cannot be affected by this action, nor can it be quieted in a party who is a stranger to it, and especially it cannot be quieted in favor of such stranger as against a *bona fide* prior occupant, claiming under color of title superior to that set up by the plaintiff."

The answer to this contention is that the title to the Fraction Mine was quieted in the plaintiff and his said coclaimants, one of whom is A. Borth, one of the original locators; that, as we think we have shown, said mine has not been subject to forfeiture, and hence the defendant's relocation is invalid; that if the Nesbitt Brothers have no valid title to DeBeck and Stevens' interest, and have not otherwise a valid interest in said mine, A. Borth has the exclusive right of possession as against them, as well as against the defendants, and the invalidity of the claim of the Nesbitt Brothers could not avail the defendant or make valid or strengthen his claim, nor could it invalidate or impair the validity of the claim of A. Borth. Any question that may exist, if any, between any of the locators of the Fraction Mine and the Nesbitt Brothers as to the rights of the latter claimants with reference to said mine, is a matter solely of their own concern, and not a matter in which the defendant has any legal interest.

We are of opinion that the evidence is sufficient to support said judgment and that said judgment is not against law. The judgment and order appealed from are, therefore, affirmed.

ON PETITION FOR REHEARING.

By the Court, BONNIFIELD, J.:

The first ground urged for a rehearing is " that the plaintiff does not pretend to sue except in his own behalf, and it certainly affirmatively appears from the complaint and the admissions in the case that he alone filed a protest in the United States Land Office against defendant's application for a patent, and therefore the appellant claims that this court erred in assuming, as it does in the opinion, that the plaintiff claimed in his protest or in this action said Fraction Mine for himself and his alleged coöwners, George Nesbitt and A. Borth as tenants in common."

Counsel are in error.in the above contention.  By the complaint it is alleged that the plaintiff and his coöwners as tenants in common are in possession and entitled to the possession of the Fraction Mine, etc.  Also, that the plaintiff · filed in the United States Land Office his and his cotenants' adverse claim to that portion of the Sleeper Mine embraced within the Fraction Mine, and plaintiff prays that the title to said Fraction Mine be quieted in him and his cotenants, and such is the decree of the trial court.  The adverse claim, filed as aforesaid, alleges, substantially, that the affiant (the plaintiff here) and his cotenants (naming them), George Nesbitt and A. Borth, are the owners, etc., of the Fraction Mine as tenants in common.

By the answer it is alleged "that said plaintiff and the said George Nesbitt and A. Borth base their rights to such possession (of a portion of the Sleeper Mine) upon the alleged pretended location called by them the Fraction mine." * * *

Where a claim is owned by more than one individual, it is customary to select one to act in behalf of all, for which purpose a special power of attorney is executed and filed with the application, but this is not necessary.  (Lindley on Mines, sec. 681.)   The practice of the department has been to recognize such application, signed by one joint owner in behalf of himself and the remaining owners.  (Lindley on Mines, sec. 681; *Ayers* v. *Dailey*, 3 Copp's L. O. 196.)   Unquestionably an act manifestly done by one coöwner for the benefit of all would be presumed to be authorized or at least ratified. (Lindley, sec. 681.)

The contention of petitioner that neither the certificates of sale of the interests of DeBeck and Stevens in the Fraction Mine nor the deeds of the officer show color of title in Nesbitt Brothers, we think, is not correct.   The certificates are regular in form and fully comply with section 3253, General Statutes of Nevada, which provides that:   " Upon a sale of real estate (under execution) the purchaser shall be substituted to and acquire all the right, title, interest and claim of the judgment debtor thereto, and when the estate is less than a freehold of two years unexpired term, the sale shall be absolute.   In all other cases the real property shall be subject to redemption

as provided in this chapter. The officer shall give to the purchaser a certificate of sale containing, * * *. A duplicate of such certificate shall be filed by the officer in the office of the recorder of the county." All of which the officer did.

The deeds are also regular in form and purport to convey by the officer said interests of DeBeck and Stevens in said mine to Nesbitt Brothers.

Petitioner further claims that, if the judgment is affirmed, the patent will be issued to the plaintiff, and that DeBeck and Stevens will be robbed of possibly immensely valuable property. But it does not appear that DeBeck and Stevens would be robbed of anything, or, if they were, how the appellant would be affected thereby. It does not appear that they have or claim to have any interest in said mine. It appears that they left the state about five years ago, and there is no intimation that they ever intend to return. It appears that after the location of said mine they did nothing to preserve their interests therein, and that nothing was done for them in that respect. Besides, this action is a continuation of the proceedings instituted in the United States Land Office, and it does not appear that DeBeck and Stevens, or either of them, filed any protest or adverse claim in that office, or that any was filed in their behalf. (*Wolverton* v. *Nichols*, 119 U. S. 485; *Doe* v. *Waterloo M. Co.*, 43 Fed. 219.)

" The statute makes such a proceeding regularly prosecuted when the period of notice is completed, without the presentation of an adverse claim absolutely conclusive against adverse claims. The proceeding is in the nature of a proceeding *in rem*, and is binding upon all the world so far as any unrepresented adverse claim is concerned." (*Hamilton* v. *Southern Nevada G. & S. M. Co.*, 13 Saw. 113.)

" The publication and posting of notice of the application for patent is a *process* which brings all adverse claimants into court—a summons to all persons whose interests may be affected by the issuance of a patent to the tract applied for to appear and file their adverse claim." (Lindley on Mines, sec. 713, and cases cited.)

" It is so well established as to be axiomatic, that a failure

to file an adverse claim within the time fixed by law oper-
ates as a waiver of all rights which were the proper subject
of such a claim." (Lindley, sec. 742, note 1.)

We find no valid reason for granting a rehearing. It
therefore is denied.