J. LAEL SIMMONS, SHIRLEY A. ARNOLD, JUNE V. SIMMONS, NELS LANDEEN, CHARLOTTA BORRESON, CHARLES M. HEPWORTH, DE-LINE HEPWORTH and WILFORD J. ARNOLD,

*Plaintiffs and Appellants,*

vs.

WALTER J. MUIR, Administrator of the Estate of MINNIE McCORMICK, MABEL McVAE, LOUIS McCORMICK, JOHN McCORMICK, EMMA JANE EVERSOLE, LORETTA SPRAGG McCARGER, KLEBER HADSELL and TOM WHALEN, if living, and if dead, then the unknown heirs, creditors and beneficiaries, and all unknown persons who claim any interest in and to the subject matter of this action,

*Defendants and Respondents,*

C. A. BRIMMER,

*Plaintiff in Intervention,*

vs.

J. LAEL SIMMONS, SHIRLEY A. ARNOLD, JUNE V. SIMMONS, NELS LANDEEN, CHARLOTTA BORRESON, CHARLES M. HEPWORTH, DE-LINE HEPWORTH and WILFORD J. ARNOLD,

*Defendants in Intervention.*

(No. 2698; December 20th, 1955; 291 Pac. (2d) 810)

For the plaintiffs and appellants, the cause was submitted upon the brief and also oral argument of Frank R. Schofield of Green River, Wyoming.

For the defendants and respondents the cause was submitted upon the brief of Brimmer & Brimmer of Rawlins, Wyoming; Kenneth W. Robinson and Robert D. Charlton of Denver, Colorado, and Walter A. Muir of Rock Springs, Wyoming, and oral argument of Mr. Charlton.

48

## OPINION

BLUME, Chief Justice.

This is an action brought on December 19, 1952, by plaintiff J. Lael Simmons and seven others to quiet title to lands hereinafter described in the findings of fact by the trial court, the plaintiffs claiming the lands under location of uranium placer mining claims filed in the county clerk's office of Sweetwater county, Wyoming, on June 5, 1952, and June 23, 1952, amended notices of location having been filed on July 2, 1952. It appears herein that the lands were not at that time withdrawn from entry and further that the rights of

the parties hereto have not been adversely affected by the recent acts of Congress relating to uranium claims or the Atomic Energy Commission, except, if we understand it correctly, as to the sale of uranium.

The action was brought against Walter J. Muir, administrator of the estate of Minnie McCormick, deceased, and seven others. C. A. Brimmer thereafter filed a petition of intervention. His claim, however, seems to be settled, and he is no longer interested in the appeal herein. Issues were duly joined in the action, the defendants denying plaintiff's right or title in the land involved herein, and claiming title to the lands under uranium placer mining claims filed long prior to the time that the plaintiffs filed their locations and claims to the property. The main question herein is as to whether or not the prior locations of the defendants were legally in effect at the time of the filing of the claims and locations of the plaintiffs herein. It may not be amiss to give a brief summary of the acts and claims of the defendants.

The evidence shows that Minnie McCormick, now deceased, was the main party to have the lands involved herein and other lands developed as uranium claims. For convenience, she though now deceased, will be included under the term defendants or senior locators wherever they are mentioned herein as such. She and seven others on February 23, 1937, and again on July 1, 1939, filed in the office of the county clerk of Sweetwater county, Wyoming, their notices of location of placer mining claims covering the lands here in controversy, and other lands, claiming that valuable deposits of uranium and other minerals were contained in the lands. The claims were properly located and staked and it is admitted that valuable minerals were found on the property as claimed by defendants.

On September 10, 1945, the defendants filed in the office of the clerk of Sweetwater county, Wyoming,

their notices of location of uranium placer mining claims embracing among others all the lands here in controversy. Three different notices were filed for the lands involved herein and stated that the claims and locations should be known as Golden Arrow Nos. 1, 2 and 8 placer mining claims. It does not appear the claims under these notices were staked on the ground. These filings will be described more in detail hereinafter. Plaintiffs claim this was a new location and that the former locations and claims were abandoned.

On January 18, 1947, the defendants herein entered into an operating agreement with W. Walter Byron which is in the nature of a 20-year lease to Byron, under which Byron undertook to develop the lands involved herein for uranium and other minerals. In November 4, 1948, this operating agreement was assigned by Byron, with the consent of the defendants, to Uranium, Incorporated. The Minerals Engineering Company did some work on the property and, if we understand the testimony, was paid $3,500 for its work. Uranium, Incorporated, undertook to get the United States Geological Survey and the Atomic Energy Commission interested in the property and saw a number of the latter commission in Denver and a trip was taken to Washington, D. C., for the same purpose. These agencies of the United States were not at first interested in the property but later changed their minds upon a showing that the uranium deposits were more valuable than had appeared previously. So on October 18, 1950, the U. S. Geological Survey on behalf of the United States Government entered into an agreement with Uranium, Incorporated, in regard to the development of the claims here involved. A like agreement was entered into with the U. S. Geological Survey by Minnie McCormick and her associates. The agreement gave the Government and its contractors the right among other things to enter upon the lands and to prospect,

drill, bore and explore the lands for minerals. The further right was given of reasonable use of the property and the right that other parties might be excluded from that portion of the lands on which the Government conducted its operations. The agreement further provided that:

"The obligations of this agreement shall extend to and be binding upon, and the benefits hereof shall inure to, the heirs, executors, administrators, successors, or assigns of the parties hereto."

The agreement also provided that it should continue for one year with the right of the Government to renew the agreement for another year. This right of renewal was in fact exercised by the Government on September 21, 1951. Pursuant to this contract a great deal of development work was done upon the property in controversy. It is agreed by the parties that the Government did work in the amount of $100 on each of the claims here involved during each of the years from July 1, 1950, to June 30, 1952.

We might say generally that the evidence in the record indicates that defendants and their assigns have shown by the work done on the claims, by various laboratory tests made of the ore, by elaborate reports made in connection therewith and by the numerous efforts made to determine the value of the uranium deposits, that they, in good faith, complied with, or at least attempted to comply with the requirements of the law to explore and develop the properties and did so before and after the plaintiffs located their claims. In view of the stipulations entered into by the parties, it is not necessary to mention the work done and efforts made in greater detail than above mentioned so far as done before July 1, 1950. The period from July 1, 1950, to June 30, 1952, will be discussed hereafter.

The case was tried to the court without a jury commencing on May 17, 1954. On November 15, 1954, the

court, upon request, made the following findings of fact and conclusions of law:

## "FINDINGS OF FACT

"1.   That Minnie McCormick died intestate on August 15th, 1951; that Walter J. Muir is the duly appointed, qualified and acting administrator of her estate; and that the use herein of the word 'Defendants' shall, for purposes of brevity, be taken to include the present Defendants and their predecessors of interest.

"2.   Plaintiffs and Defendants both claim certain property described as follows:

The North Half, the North Half of the South Half, the Southeast Quarter of the Southwest Quarter, the Southeast Quarter of the Southeast Quarter of Section 30; the East Half, the Southeast Quarter of the Northwest Quarter, the Northeast Quarter of the Southwest Quarter, the South Half of the Southwest Quarter of Section 31; the Northwest Quarter of the Southwest Quarter of Section 32; Township 26 North, Range 94 West of the 6th P. M., Sweetwater County, Wyoming.

"3.   That prior to September 10th, 1945, Defendants filed Notices of Location of Placer Claims on the said property; that on September 10th, 1945, Defendants filed Notices of Location of Placer Mining Claims covering the same land described in their prior locations; and that each of the last mentioned Notices of Location embraced a full section of Six Hundred-Forty (640) acres.

"4.   That on June 29th, 1951, Minnie McCormick filed in Sweetwater County, Wyoming, certain unsworn documents, each purporting to be a 'Proof of Labor— Placer Claim' covering land, a part of which was the property above described.

"5.   That Plaintiffs herein, on June 5th and on June 23rd, 1952, filed Notices of Location of Placer Mining Claims, and on July 2nd, 1952, filed Amended Notices of Location covering the area above described.

"6.   That Plaintiffs proved the performances of certain work on the said claims during the period from July 1st, 1952 to June 30th, 1953, but failed to prove by a preponderance of the evidence that the amount of

work done totaled One Hundred Dollars ($100.00) per claim or more.

"7. That the 'Agreement for Mineral Exploration' dated October 18th, 1950 (Defendant's Exhibit U) related to the land in question, and provided, inter alia, 'The obligations of this agreement shall extend to and be binding upon, and the benefits hereof shall inure to the heirs, executors, administrators, successors, or assigns of the parties hereto'; and the work performed on the mining claims in question, in accordance with this agreement, was accomplished for the benefit of Defendants and the agency of the United States government making the said contract.

"8. That Plaintiff presented no evidence and made no claim that the Notices of Location of Placer Claims filed by Defendants prior to September 10th, 1945, were invalid; that Plaintiffs produced no evidence and made no claim that Defendants had failed to do the requisite annual assessment work for the period 1937 to 1950, inclusive; and that Plaintiffs failed to prove by a preponderance of the evidence the failure of Defendants to do work in excess of One Hundred Dollars ($100.00) per claim during the mining years July 1st, 1950 to June 30th, 1951, and July 1st, 1951 to June 30th, 1952.

## "CONCLUSIONS OF LAW

"1. That, as between rival claimants to mining claims, the burden of proof is upon the junior locator to prove the validity of his locations; and that Plaintiffs in this case are junior locators.

"2. That original Notices of Location of Mining Claims and Amended Notices of Location of Mining Claims must be construed together; and that the Notices of Location of Placer Mining Claims filed by Defendants on the said mining claims on September 10th, 1945, when thus construed, do not constitute an abandonment or forfeiture of the former locations.

"3. That the land in question was not open for the filing of Plaintiffs' Notice of Location of Placer Mining Claims on June 5th or June 23rd, 1952.

"4. That Plaintiffs have made no valid discovery of valuable mineral deposits on said land in controversy.

"5. That various instruments, each denominated 'Proof of Labor—Placer Claim,' signed by Minnie McCormick were not affidavits within the meaning of Sections 3-2902, 3-2903 and 3-2904, WCS, 1945; but the fact of the performance or non-performance of labor on mining claims is susceptible of proof by methods other than affidavits; and the insufficiency of an affidavit of assessment work does not, per se, render the area subject to relocation.

"6. That the interest claimed by C. A. Brimmer, Intervenor, is based upon an oral contract to convey an interest in real estate, in violation of the Statute of Frauds, and said oral contract is invalid; and that the legal status of Intervenors' rights in the claims in question is not material to the determination of the relative rights of Plaintiffs and Defendants in the property.

"7. That Plaintiffs have no right to said mining claims; that Defendants' rights to said claims are superior to those of Plaintiffs; and that Defendants are entitled to a Decree quieting title to said claims in Defendants and against Plaintiffs."

The court thereupon rendered judgment in favor of the defendants and against the plaintiffs. From that judgment the plaintiffs have appealed to this court. The plaintiffs will hereafter be referred to as appellants or junior locators, and the defendants as such or as senior locators.

Counsel for appellants have argued most of the findings of fact and conclusions of law separately, although some of the conclusions of law might well have been argued in conjunction with the related findings of fact. We do not think it is necessary to follow the course pursued by counsel for appellants. The only two matters that need to be decided by us are (1) the effect of the location by defendants on September 10, 1945, and (2) whether or not the proper assessment work was done by the senior locators and their assigns. It may not be amiss before discussing these matters to mention a few rules of law which govern in this case.

It is stated in 5 C.J.S. pp. 686, 687, that the trial court's findings will not be lightly disturbed and that an appellate court is extremely reluctant to disturb the findings of fact by the trial court. In Hagerman v. Thompson, 68 Wyo. 515, 235 P. 2d 750, 758, we quoted from 58 C.J.S. p. 101:

" 'Where a locator attempts in good faith to comply with the law, the courts are inclined to be liberal in construing his acts so as not to defeat his claim by technical criticism.' "

Again in 58 C.J.S. p. 144, it is stated:

"One who claims the forfeiture of a mining location must plead it; and the burden is on him of proving the forfeiture alleged by clear and convincing evidence that the locator has failed to comply with the law; and every reasonable doubt will be resolved in favor of the validity of the mining claim as against the assertion of a forfeiture. Thus the burden of proof of showing a failure to perform the annual assessment work is in the first instance on the one alleging the forfeiture, and the evidence must be clear and convincing of the failure of the locator to have the work performed or improvements made to the amount required by law."

1: The Filing of Notice of Location on September 10, 1945.

Appellants contend that the filing of notices on September 10, 1945, constituted a new filing and an abandonment of those filed previously. They refer us to § 57-907, Wyoming Compiled Statutes 1945, which provides as follows:

"No location certificate shall contain more than one claim or location, whether the location be made by one or more locators, and any location certificate that contains upon its face more than one location claim shall be absolutely void, except as to the first location named and described therein, and in case more than one claim or location is described together so that the first one cannot be distinguished from the others, the certificate of location shall be void as an entirety."

They further cite us to Title 30, § 36, U.S.C.A., which

provides in part as follows:

"but no location of a placer claim, made after the 9th day of July 1870, shall exceed one hundred and sixty acres for any one person or association of persons, \* \* \*."

It is probably true that the grouping of claims in 1945 was illegal if considered as an original notice of location. But was it such an original notice of location? The first notice of location for the claims here involved was filed on February 23, 1937. At that time the filings were designated by the term "Golden Arrow" but the groupings were different. In the notice of February 23, 1937, Golden Arrow No. 1 contained only "the NE quarter ¼ of section 31 township 26Range 94 West of the 6th Principal Meridian" namely, 160 acres. The grouping of September 10, 1945, contained 640 acres. On the face of things, accordingly, it would seem all that was intended by the notices of location on September 10, 1945, was to change the groupings and the amount of land contained in such grouping. If the notice of location of September 10, 1945, was in the main illegal and hence a nullity, it is difficult to see that an act which in the eyes of the law is a nullity should adversely affect a previous and lawful act. Nor can we say that the new notice of location constituted abandonment of the previous one. The question of abandonment is mainly a matter of intention. 58 C.J.S. p. 138. The locations on September 10, 1945, claimed all the land which the locators claimed in the previous locations and hence instead of showing an intention to abandon would seem to indicate the exact contrary. All subsequent acts of the defendants show the contrary. We should not, we think, presume the expenditures made after 1945 were made under an illegal notice of location which as stated was in the main a futile act and a nullity, but we should, we think, presume the contrary. The point involved herein is quite well settled. Thus it is stated in 58 C.J.S. pp. 139, 140:

"An abandonment does not arise from the omission of a portion of a claim from a survey for a patent by mistake of a surveyor, or from the mere fact that a locator attempts to relocate the same ground, even though the attempted relocation is made under a name for the claim different from that given on the original location."

In the case of Temescal Oil Mining & Development Co. v. Salcido, 137 Cal. 211, 69 P. 1010, 1011, the court stated:

"The attempted relocation in 1896 was invalid, and did not amount to an abandonment of the previous location, and, so far as plaintiff is concerned, that location of 1896 is entirely immaterial, as its claim was not located until 1900. The work which was done by defendants in 1898, 1899, and 1900 will be attributed to the location of 1891, the only previous location which was valid."

See also Weill v. Lucerne Mining Co., 11 Nev. 200; Bergquist v. West Virginia-Wyoming Copper Co., 18 Wyo. 234, 106 P. 673, 677; Hartman Gold Mining Co. v. Warning, 40 Ariz. 267, 11 P. 2d 854; Peachy v. Gaddis, 14 Ariz. 214, 127 P. 739.

2. Assessment Work.

No attack was made on the assessment work done prior to June 30, 1950, and the only claim made is that the required assessment work of $100 per claim was not done during the years from July 1, 1950, to June 30, 1951, and from July 1, 1951, to June 30, 1952. In fact the only year of vital importance is the year from July 1, 1950, to June 30, 1951, for the reason that appellants filed their notices of location on June 4, 1952. If defendants, their assigns and privies performed the work required of them up to June 30, 1951, then the location of appellants was premature and wholly void because the defendants and their privies had until June 30, 1952, to do their required work. That point was decided and fully discussed in Griffith v. Noonan, 58 Wyo. 395, 133 P. 2d. 375. The question before us

has two phases, namely, (a) Whether the proper assessment work was done by defendants and their assigns and (b) Did the work done by the U. S. Government inure to the benefit of defendants and their assigns? If it did, then since it was stipulated that the Government did work of $100 on each of the claims in controversy, the proposition under (a) becomes immaterial. However, we prefer to discuss both (a) and (b).

(a)   Assessment Work by Defendants and Their Assigns.

Appellants contend that the evidence clearly shows that the proper assessment work for the year 1950-1951 was not done. They cite us. to the testimony of John McCormick, who testified that the Government's work was taken as the assessment work for that year. Appellants also call attention to the fact that Uranium, Incorporated, assignee and lessee of defendants, filed no affidavits that the assessment work for that year was done; that Minnie McCormick filed a statement that the work was done, but that it was an unsworn statement; that she, better than anyone else was in a position to know whether or not the proper work was done, and that when she failed to attach an affidavit to her statements, it clearly appears that the proper work was not done. Appellants say that the foregoing facts made a prima facie case for them, and the burden to show the contrary thereupon shifted to the defendants, citing Kramer v. Taylor, 200 Or. 640, 266 P. 2d 709. However, the force and effect of the foregoing facts and circumstances was for the trial court to resolve in view of other testimony in the case, namely, that by Robert Swanson who testified that he and some assistants did assessment work on the claims involved for some five days in June of 1951 on behalf of Uranium, Incorporated. Strangely enough, appellants in their brief claim this work was done in June of 1952

after appellants located their claims. This error—and error it was—leaves their argument on the point before us with little force and effect. Swanson testified that he and his assistants went onto the claims—sections 30, 31 and 32 and had with them a jeep with an auger mounted on the jeep, together with geiger counter, mineral light and sampling facilities. They carried out a systematic plan of digging holes, having a map with them. They began the drilling at the southeast trench which had been dug by the Minerals Engineering Company, went south 45 degrees from the farthest southeast trench and every second trench drilled a hole extending the known ore zone. They drilled 112 holes in section 31, some in section 32 and some in section 30. They found pellets for which they were looking. In most of the holes they made tests with a mineral light for fluorescence and tested practically each hole with a geiger counter. The witness testified that the value of the work was from $1,250 to $1,500, making more than $100 for each claim here involved.

Appellants argue that the work done by the senior locators was not pinpointed, by which we presume they mean it was not shown that the proper assessment work was done. From that, if we understand counsel, they draw the conclusion that it appears the proper assessment work was not done on all the claims and that hence the burden of proof that the work was done for the benefit of all the claims shifted to the senior locators. They cite New Mercur Mining Co. v. South Mercur Mining Co., 102 Utah 131, 128 P. 2d 269. It may not be amiss to examine the rule of shifting of the burden to some extent. We could have wished counsel for defendants had done so. They evidently misunderstood the law and their statement that work on contiguous claims may be done on one claim does not reach the point in question of the shifting of the burden of proof. The rule here invoked by counsel for ap-

pellants appears to apply in any event if the assessment work done is altogether outside the limits of a group of claims. 2 Lindley on Mines, 3d Ed., § 630, p. 1554. Whether it applies in all other cases also is another question. We should perhaps examine § 57-924 W. C. S. 1945 more closely than we have heretofore done. That section provides as follows:

"When two (2) or more placer mining claims lie contiguous and are owned by the same person, persons, company or corporation, the yearly expenditure of labor and improvements required on each of such claims may be made upon any one of such contiguous claims if the owner or owners shall thus prefer."

In the case at bar the claims involved herein are all owned by one party; they are all contiguous and they are placer claims. On the face of the statute, these are all the facts necessary to be shown in order that the work done on any one claim inures for the benefit of all, provided, of course, that the total work done is sufficient to cover assessment work of $100 for each claim in accordance with the provisions of § 57-923 W.C.S. 1945. In other words, while it is doubtless true that the assessment work on one claim should be such as to benefit the whole group, § 57-924, supra, seems to contemplate that when the facts herein mentioned appear, there is a presumption that the work on one of the group-claims benefits all the others, and that to show the contrary would devolve upon the junior locators. The section provides the conditions under which the provisions thereof are applicable, namely, (1) that the group claims are owned by the same party; (2) that the claims are contiguous and (3) that the claims are placer claims. There is no indication in the section that other conditions should be affixed, namely, that the owner must show that the assessment work on one claim benefits the contiguous claims as well. See 58 C.J.S. § 72, p. 131, under "placer claims". It is not suggested that § 57-924 W.C.S. 1945 is in any way in

conflict with the federal statutes on the subject. It seems to be, as it were, supplemental thereto. Doubt on the subject is thrown by what is said in the note to Title 30, § 28, U.S.C.A. pp. 198, 199, subdivision 318, where it is stated:

"Assessment work done upon one of a number of adjoining claims held in common, to the amount required to be done upon all of them for the year, is sufficient to hold all of them, if it be clearly shown that it was intended as the annual assessment work upon all the claims and that it was of such a character that it would inure to their benefit and would facilitate the extraction of minerals from each of the claims. * * * In order that work done on one or more of a group of claims shall inure to the benefit of all, it must be shown affirmatively that it was of a character which tended to develop group as whole, and the expenditure of money or labor must equal in value that which would be required on all the claims if they were separate and independent."

See also Morrison's Mining Rights, 16th Ed., p. 118; 2 Lindley on Mines, 3d Ed., § 630; 58 C.J.S. 144, n. 5.

Most of these cases relate to lode claims and not to placer claims and do not involve any statute such as we have above considered. The case of Parker v. Belle Fourche Bentonite Products Co., 64 Wyo. 269, 189 P. 2d 882, refers to § 57-924 W.C.S. 1945, but does not discuss it. In that case the junior locator undertook to show and did show that work done on other claims did not benefit the claim located by him. This would be in accord with what we have said in connection with § 57-924 W.C.S. 1945.

If, however, the suggested meaning of § 57-924 W.C.S. 1945, is not correct that does not help the appellants in this case. There is evidence tending to show that Uranium, Incorporated, had a general plan for the development of all the claims involved herein. A number of laboratory tests were made as to the quality of the uranium ore, trenches were dug and holes were

drilled in order to extend the area of the valuable uranium ore. There was direct testimony to the effect that the work done from 1947 to 1952, inclusive, in fact benefited all the claims in controversy herein. It is true there was some testimony to the contrary but the conflict was to be resolved by the trial court. Moreover it does not clearly appear on what particular claims no assessment work was done and hence we cannot say the burden of proof shifted in connection with any particular claim, let alone, as to all of them.

Whatever "pinpointing" was to be done was to be done, we think, by the appellants herein according to the rule stated in 58 C.J.S. 144.

In view of what we have said, little needs to be said as to the assessment work in the year from July 1, 1951, to June 30, 1952. The record shows a statement duly sworn to by W. Walter Byron that the assessment work for that year was duly performed. There is also testimony showing that the Minerals Engineering Company was paid the sum of about $1,800 for work done by that company in June 1952; that samples were taken by that company and tested in a laboratory. The question as to whether or not the proper assessment work was done is ordinarily a question of fact to be determined by the trial court. Parker v. Belle Fourche Bentonite Products Co., supra. We see no reason why the findings of fact by the trial court in this connection should be overruled.

(b)   Government Work.

Appellants contend that the work done on the mineral claims here involved by the agency of the United States Government should not inure to the benefit of the defendants and their assigns. They claim that the development required by law must be done at the expense of private parties and that work done at the expense of the taxpayers of the country ought not and does not inure to locators of mining properties.

There are no decisions so far as we know on this point, but in view of the probable development of uranium claims in the future, and the fact that a situation like that at bar may again arise in a number of cases, we think that we should give our opinion on the subject, hoping that our reasoning will not be too far afield.

If the contention of appellants is correct, it must be so generally. Suppose that a governmental agency enters into a contract such as here involved but with the right to exclusive possession for say two years or as long as the Government desires. The right or power of the Government to enter into such a contract can hardly be doubted, and in view of its vital interest in the development of uranium claims, a patriotic citizen could hardly refuse to join in such a contract. Let us further suppose that at the end of a year or later the Government quits work on the claim. If the contention of appellants is correct, the locators would be compelled to constantly be on the watch to see when the Government would quit. If it should quit in the middle of the night, then at one o'clock in the morning thereafter, a junior locator, more vigilant than the senior locator, could relocate the property and obtain priority over the senior locator. Such a result would, of course, be utterly unjust and deplorable and hence should not be considered to be good law. That should be said to be true also under the contract in the case at bar, for the United States Government might have chosen to have exclusive control of the premises. It would seem to be clear accordingly that at least considerable doubt is thrown on the contention of the appellants that the work of the Government in no manner whatever affected the rights of the parties herein.

The argument that the money of a taxpayer cannot or ought not to be used in exploring and developing the mineral claims of the defendants becomes rather

shadowy when we consider the numerous projects in which the Government is involved. It has, for instance, spent millions of dollars for the development of water power and water rights so that some of the people may have cheaper power and cheaper water for agriculture. The development of uranium claims is, it is hardly necessary to say, also important. It may involve the safety of the Nation. To spend a few thousand dollars to help develop such claims would have a tendency to further development by private parties. It would be to the interest of the public at large. There is, of course, a difference between the projects above mentioned such as in connection with water rights and the work done by the Government in the case as bar. But the fundamental principle involved is, we think, very similar. True, by the projects mentioned above, the benefit would go to many, while the apparently direct benefit in this case would go to but few, but the indirect benefit might be different, might be great, and the agents of the Government doubtless thought it to be so, otherwise, they would not have done the work in question.

It is stated that labor performed by a mere trespasser or a stranger to the title not in privity with the owner will not inure to the benefit of the locator. 2 Lindley on Mines, 3d Ed., § 633. See 58 C.J.S. 127, n. 25. The term "in privity with" is somewhat uncertain. See under the term Privity in 72 C.J.S. 954, et seq., and 33 Words and Phrases 798, et seq. Perhaps it means one who has acquired an interest in the land from and through the locator, for it is said that the ground of privity is property, not a personal relation. Bailey v. Sundberg, 49 Fed. 583, 586. If that is the meaning, it could not well be said that the United States acquired an interest in the title to land by and through any act of the original locators. We need not, we think, pursue this point further. The federal act

in relation to the performance of annual labor on mineral claims does not say by what party the work shall be done. Wailes v. Davies, 158 Fed. 667. The act contains no prohibition that it may not be done by the Government. It is well settled that the locator need not personally do the assessment work. The work may be done by an agent or representative of the locator who does the work at the instance of the locator. 58 C.J.S. 127, Nesbitt v. DeLamar's Nevada Gold-Min. Co., 24 Nev. 273, 52 P. 609, 610. The Government of the United States is purchaser of uranium ore. Such ore may also be purchased, as appears in the record before us, by private purchasers licensed by the Government. Suppose that such private purchasers should enter into a contract with the locator to develop the uranium locations; there can scarcely be any doubt that such development work would inure to the benefit of the locator. Now, since the Government is also a purchaser, it is difficult to see why an exception should be made in that case. The Government is the owner of the lands until patent is issued; it is interested in having the claims developed; it has the power to develop them without interference by anyone. If it chooses to develop the property jointly with the locator, either periodically or otherwise, no particular reason exists why it should not do so. Every contract which the Government makes with private individuals presumably bestows some benefit on the latter. It is not easy to see why the contract involved in the case at bar should not bestow a benefit on the defendants and their assigns and lessees and thus create an exception to the general rule, when presumably the Government receives a benefit in return.

We think that the contention of the appellants now considered should be overruled, and that we should hold the development work done by the Government of the United States on the uranium claims here involved

inured to the benefit of the defendants and their assigns and lessees.

In view of what has been said, it follows that the judgment of the trial court should be and is affirmed.

*Affirmed.*

HARNSBERGER, J., concurs.