[Civil No. 579.   Filed April 16, 1898.]

[53 Pac. 197.]

# F. E. JORDAN et al., Plaintiffs and Appellants, v. JOHN DUKE et al., Defendants and Appellees.

1. APPEAL AND ERROR — REVIEW — REVERSIBLE ERROR. — A judgment rendered upon the verdict of a jury must stand, unless there be shown some error of the court in directing the issues, or the introduction or rejection of evidence, or the instructions to the jury, where there is no question as to the sufficiency of the evidence to support the verdict.

2. MINES AND MINING—SUIT TO QUIET TITLE—REV. STATS. ARIZ. 1887, PAR. 3132, AS AMENDED, LAWS 1891, ACT NO. 46, CITED—ISSUES—GENERAL DENIAL—CROSS-COMPLAINT SETTING UP TITLE IN DEFENDANTS — APPEAL AND ERROR — INSTRUCTION AND EVIDENCE — ERROR AFFECTING GOVERNMENT, WHEN REVIEWED.—Where in an action to quiet title to mining ground, brought under the provisions of the statute, *supra,* the defendants go to trial upon a general denial only, the whole issue is as to the validity of the plaintiffs' claim and the right of plaintiffs to maintain the same as against the government; but where defendants have filed a cross-complaint, setting up a claim within themselves, the issue becomes one between the plaintiffs' claim and the government, between defendants' claim and the government, and between plaintiffs' and defendants' claims. In such contests, where a verdict is rendered for either claimant and against the government, evidence and instructions pertinent to the issues as to whether the successful claimants' location was valid as against the government become immaterial and will not be reviewed on appeal.

3. PARTIES—DEFENDANT—TRANSFER OF INTEREST—ADDING PARTY—REV. STATS. ARIZ. 1887, PAR. 725, CITED.—It is not reversible error for the trial court to allow a person who has purchased defendants' claim pending the action to be added as a party defendant, plaintiffs not being injured thereby. The statute, *supra,* providing for substitution of parties where there is a transfer of interest, cited.

4. MINES AND MINING—AMENDED LOCATION NOTICE—EVIDENCE—NOT CHANGING RIGHTS—HARMLESS ERROR.—The introduction of an amended location notice, made with reference to the original location, for the purpose of curing possible errors therein, is harmless although useless, there being no contest as to the original location being invalid in any other way than that the ground at the time such location was made was not subject to location.

5. SAME—LOCATION NOTICES—RECORDING ACT—LAWS 1895, ACT NO. 42, APPROVED MARCH 20, 1895; REV. STATS. ARIZ. 1887, PAR. 2349, CITED

—REGISTRATION ACT—CONSTRUCTIVE NOTICE.—Prior to the statute, *supra*, there was no penalty attached to a failure to record a location notice. The law, *supra*, prior to that time was in effect but a registration act, and location notices recorded under it simply imparted constructive notice as any other registration act.

6. EVIDENCE — MAPS — ILLUSTRATIONS OF TESTIMONY — SUBSTANTIVE EVIDENCE.—A map prepared by an engineer who was upon the ground and took the bearings and distances of certain monuments in relation to each other and to other objects, as they were pointed out to him by the locator, from his field-notes, unless it is to be used in evidence as a substantive and independent piece of evidence, need not be proved to be correct before admission in evidence; and where the map is proven to be a correct representation of the lines connecting the objects pointed out to the engineer, it is not necessary that it should be able to stand the tests as to whether the monuments represented were the correct monuments, it being used in connection with the testimony of witnesses to show that which they were endeavoring by words to explain.

7. MINES AND MINING — ASSESSMENT-WORK — RESUMPTION OF WORK—PREVENTS FORFEITURE—UNTIL FAILURE TO COMPLETE WORK.—If assessment-work be not completed on a mining claim in any part of the year in which the statute requires it to be done, but the owners thereof are upon the ground for the purpose of doing the work before the year expires, and then prosecute the work to completion, the work so prosecuted will have relation to the year in which it should have been done, and such resumption will prevent the claim from being forfeited until there is a failure to prosecute the work after the same has been resumed.

8. SAME—RELOCATION, WHEN VALID.—Until a location has been abandoned or has been forfeited no other location can be made of the ground.

9. SAME—ASSESSMENT-WORK—RESUMPTION OF WORK—AFTER EXPIRATION OF YEAR AND BEFORE OTHER RIGHTS ATTACH.—If the first locator of mining ground resumes work at any time even after the expiration of the year, but before other rights attach in favor of relocation, he preserves his claim.

10. SAME—SAME—SAME—RELOCATION—SUBSEQUENT FORFEITURE—RELATION.—Where the locators of mining ground were upon it the last day of December and asserted they were there for the purpose of resuming work, and continued in possession for five or six days afterward, making an expenditure of sixty dollars, when they went away and never returned, an attempted relocation made by other parties on the first day of January is void, the former claim not being subject to relocation until the owners quit work, several days thereafter, there being no such thing as making a location of ground not open to relocation by reason of being already relocated, and then, because of failure on the part of the owners to support that

claim either by abandonment or forfeiture, have the relocation relate back to the original act.

DISMISSED with costs on authority of counsel for plaintiffs in error. 43 L. Ed. 1185, 19 Sup. Ct. 877.

APPEAL from a judgment of the District Court of the First Judicial District in and for the County of Pima. J. D. Bethune, Judge. Affirmed.

The facts are stated in the opinion.

F. E. Corbett, Herndon & Norris, and John J. Hawkins, for Appellants.

It may be admitted that under the petition of Schuerman, and with the consent of defendants, the court had power, under section 725, had the application so to do been made within the proper time, to substitute Schuerman as the *sole* defendant in the action. The statute expressly provides that in the case of a transfer of interest pending suit the cause may be continued either in the name of the original party or in the name of the transferee; and nowhere does it appear in the statute that any such action may be continued in the name both of the original party and the transferee. Estee on Pleading, sec. 4494; *Virgin* v. *Brobaker,* 4 Nev. 31; *Noss* v. *Shear,* 30 Cal. 476; *Walker* v. *Felt,* 54 Cal. 386.

The court erred in permitting the introduction in evidence, and in permitting to be exhibited to the jury, a certain map and a certain model of the ground prepared by the defendants, for the following reasons: It is plain from the testimony introduced in the action at the time the map and model were offered, and at other times throughout the progress of the case, that this map and model were made upon the statements and representations made to the persons who constructed the map and model by W. H. Ferguson, who, it appears from all the evidence in the case, was not the locator of all the claims shown upon the map and model,—who was in fact the locator of only three of such claims.

In the case of *Bunker Hill etc. Min. Co.* v. *Schnelling,* 79 Fed. 263, the following doctrine is laid down upon the subject of admission of maps, and the same rule will apply to a model. The decision of the court is as follows: "Another point made on behalf of the plaintiff in error, is that the court,

against the objection and exception of the plaintiff in error, admitted in evidence a diagram of the stope where the accident occurred, made by one Easton upon the representations of witness Powers and others as to its appearance after the accident, and the court admitted it in connection with his testimony only as his version of the works, which the jury might consider for what it was worth."

The rule is that such a map and model as were offered and admitted in this case may be taken by the jury for what it is worth, as the version or opinion of witnesses making the same, but even under this broad rule the action of the court in admitting this map and model cannot be upheld, for the reason that after the map and model were admitted then, over the objection of the plaintiffs, the court permitted all the witnesses who testified for the defendant to testify from the map or model, using the same with their testimony, and thereby assuming that the map and model correctly delineated the ground in controversy and all other matters which they purported to represent.

If the map were introduced as a part of the testimony, and for the purpose of explaining the testimony of the witnesses who made it, and if it was competent for that purpose, it cannot be argued that it was therefore competent for all purposes, and that all witnesses had a right to testify thereupon. See *Commonwealth* v. *Switzer,* 134 Pa. St. 383, 19 Atl. 681; *Kansas City Railroad etc. Co.* v. *Smith,* 90 Ala. 25, 24 Am. St. Rep. 753, 8 South. 43; *Burwell* v. *Sneed,* 104 N. C. 118, 10 S. E. 152; *Hoge* v. *Ohio R. R. Co.,* 35 W. Va. 562, 14 S. E. 152; *Poling* v. *Ohio River Railroad Co.,* 38 W. Va. 645, 18 S. E. 782, 24 L. R. A. 215; *Turner* v. *United States,* 66 Fed. 289; *Wood* v. *Willard,* 36 Vt. 82, 84 Am. Dec. 659.

Mere possession of the mineral land is good as against a mere intruder, but not as against one who has complied with the laws and made a legal location. *Atwood* v. *Fricot,* 17 Cal. 37, 76 Am. Dec. 567; *English* v. *Johnson,* 17 Cal. 107, 76 Am. Dec. 574; *Hass* v. *Winder,* 30 Cal. 349; *Du Prat* v. *James,* 65 Cal. 556, 4 Pac. 562; *Golden Fleece etc. Co.* v. *Cable etc. Co.,* 12 Nev. 312; *Noyes* v. *Black,* 4 Mont. 527, 2 Pac. 769; *Funk* v. *Sterrett,* 59 Cal. 613; *Patchen* v. *Keeley,* 19 Nev. 404, 14 Pac. 347.

A location not made in accordance with the provisions of the United States statutes and local laws never becomes a location to any extent whatever, and vests no title or rights in any claimant thereof. The ground attempted to be located, not having been located according to law, remains the public domain of the United States, subject to entry and location by any citizen.

"The right to the exclusive possession of mineral land not actually held in *possessio pedis* may be acquired only by a legal location thereof." *Becker* v. *Pugh,* 9 Colo. 589, 13 Pac. 906.

"Mere possession of mining ground without location is good as against an intruder who made no location." *Neuebaumer* v. *Woodman,* 89 Cal. 310, 26 Pac. 900.

And, conversely, mere possession not based on a valid location, is not good as against one who has made a location on the land in the manner prescribed by law, and the possession of such locator shall prevail over such prior possession. *Garthe* v. *Hart,* 73 Cal. 541, 15 Pac. 93; *Belk* v. *Meagher,* 104 U. S. 279, 26 L. Ed. 739.

Discovery with possession, but without location, is not valid as against a subsequent peaceable location. *Horsewell* v. *Ruiz,* 67 Cal. 111, 7 Pac. 197; *Gleeson* v. *Mining Co.,* 13 Nev. 442.

A party to a suit of this character involving the possession of a mining claim is not required to prove representation work upon the claim after having proved the proper location thereof, unless it be pleaded by the opposite party that the mining location which is relied upon has been abandoned and forfeited by reason of the failure to perform representation work, and there being no such issue in this case, according to the pleadings, it was unnecessary that any party should have introduced any evidence showing the performance of annual work upon either the Copper Chief or the Equator claims. The instruction of the court goes outside of the pleadings and issues in the case and instructs the jury that it may find against the Equator location, should they find that one hundred dollars' worth of work had not been performed thereon in each year during the several years mentioned in the instruction, thereby informing the jury that they could decide the case upon an immaterial question of fact and upon points not raised by pleadings. "The failure to do annual labor must

be specially pleaded." *Renshaw* v. *Switzer,* 6 Mont. 464, 13 Pac. 127, 15 Morr. Min. Rep. 345.

"A later location must plead a failure to do the work prior to such location, thereby showing a forfeiture." *Bishop* v. *Baisley,* 28 Or. 119, 41 Pac. 936.

The jury was informed that if the original Copper Chief location and the original Equator location were both invalid, and that therefore neither of the parties to this suit ever had any title to the ground prior to the institution of any proceedings in this action, then the jury could still in this same action find in favor of Schuerman, who was not a party thereto, by reason of the title acquired by him after the institution of all proceedings. This was error. If in such an action as this the jury should find that the locations in conflict are both invalid, the United States statutes provide that the jury shall find in favor of the United States.

"Neither party in an adverse suit can gain any rights by acts performed subsequent to the filing of the adverse claim." *Moxon* v. *Williamson,* 2 Mont. 421, 12 Morr. Min. Rep. 602.

Franklin E. Brooks, W. H. Barnes, and T. W. Johnston, for Appellees.

The amendment of pleadings during the progress of a cause and the admission of new parties is a matter entirely within the discretion of the court. It is true that this is a judicial discretion, and therefore open to review; but in the case at bar it is evident that the discretion was deliberately exercised, and that the amendment and introduction of the new party was made with deliberation, and under terms which were very severe upon the appellees. The discretion not having been abused, the action of the trial court will not be disturbed by this court. *Harrington* v. *Connor,* 51 Neb. 214, 70 N. W. 911, 6 Am. & Eng. Corp. Cases, 609; *People* v. *Sexton,* 37 Cal. 532.

As to the performance of annual labor, the language of the statute is express and definite. Upon a failure to comply with these conditions (viz., the performance of one hundred dollars' worth of work between the first day of January and the last day of December of each year), the claim or mine upon which such failure occurs shall be open to relocation in the same manner as if no location of the same had ever

been made, provided that the original locators, their heirs, assigns, or legal representatives have not resumed work upon the claim after failure and before such location.

It will be borne in mind that this is a portion of an act which provides for one hundred dollars' worth of work in each calendar year, but the only penalty for failure so to do is to make the ground, if the locator does not resume work thereon, subject to relocation thereon by others. This forfeiture is not an absolute one, but rather one upon condition. If the condition be performed,—i. e. re-entry before location by another,—the forfeiture never becomes operative. If, however, before such re-entry the ground should be located by another, then the forfeiture would become absolute. There is no need of resort to the well-recognized doctrine that forfeitures are not favored by the courts, for the statute itself is clear and explicit that there shall be no forfeiture in case of a resumption of work by the locator before another relocates the ground.

No suggestion is contained anywhere in the act which looks toward any requirement for cumulative work in case of an abandonment or forfeiture and a subsequent re-entry. No citation is given in support of any such theory. The contrary is distinctly involved in the decision in *Belk* v. *Meagher,* 104 U. S. 279, 26 L. Ed. 739.

The reason for the contrary view is obvious. The theory of the government is, that in the first instance only the government itself and the locator are concerned. As against the locator, the government, in its bounty, disregards the inability of the prospector to keep alive his location from year to year, and allows him at any time before relocation by another to reinvest himself as of his former estate. It is evident that if he in any year complies with the statutory requirements for that year alone, and before other rights have accrued, he has placed himself in a position to challenge the world upon this proposition.

If during the year of re-entry one hundred dollars' worth of work is performed, the case stands as though no failure had ever occurred. No time limitation when the party shall re-enter and resume his title is laid down either by the statute or the courts. This may be done at any time. *Lakin* v. *Sierra Butte G. M. Co.,* 25 Fed. 337, 11 Saw. 231, 241; *Jupiter*

*M. Co.* v. *Bodie Con. Min. Co.,* 11 Fed. 666, 7 Saw. 96; *North
Noonday M. Co.* v. *Orient M. Co.,* 1 Fed. 522, 6 Saw. 299.

STREET, C. J.—The appellees Duke & Ferguson filed in
the land office in Prescott, Arizona, in May, 1891, an applica-
tion for patent to a certain mining claim in Verde Mining
District, Yavapai County, Arizona, called the "Copper
Chief." In July thereafter appellants filed in said land office
their contest to said application for patent to said Copper
Chief mining claim on the ground that 6.14 acres of land
embraced in the Copper Chief mining claim was the property
of appellants, and within the limits of a certain mining claim
belonging to them called the "Equator." Upon the filing of
said contest the usual order was made in the land office, stop-
ping all further proceedings until the rights of the parties to
that portion of said mining claim in contest could be ascer-
tained by a court of competent jurisdiction. Appellants
thereafter instituted this suit against the appellees Duke &
Ferguson, claiming title and the right of possession of 6.14
acres of land embraced within the Copper Chief mining claim,
as well as within the Equator mining claim, as shown by the
diagram accompanying this opinion. The action by appel-
lants against appellees is in the nature of a suit to quiet title
under the provisions of paragraph 3132 of the Revised Stat-
utes of Arizona, as amended by act No. 46 of the sixteenth
legislative assembly of Arizona, approved March 17, 1891,
which reads as follows: "An action to determine and quiet the
title of real property may be brought by any one having or
claiming an interest therein, whether in or out of possession
of the same, against another who claims an estate or interest
adverse to him."

To the complaint of plaintiffs the defendants Duke & Fer-
guson filed a general denial, and the cause proceeded to trial
before a jury in the district court of Yavapai County, where
the same was instituted. Verdict and judgment were in their
favor, and from which judgment appellants prosecuted an
appeal to this court, and obtained a reversal thereof and a
new trial upon an assignment of error, covering certain in-
structions given by the court to the jury. Before the cause
was tried anew it suffered a change of venue to Pima County,
and thereupon the defendants Duke & Ferguson amended

their answer and filed a cross-complaint setting up title to the
land in dispute, and asked that their title be quieted against
the claim of appellants. The cause was tried before a jury,
and after the plaintiffs had rested their case, and the defend-
ants Duke & Ferguson had introduced a large body of their
testimony, the defendant Schuerman obtained leave of the
court to be added as a party defendant upon showing to the
court that he had succeeded to the interests of Duke & Fer-
guson in and to the Copper Chief mining claim.

The dispute to the ground in contest arises upon priority of
location of the Copper Chief and the Equator mining claims
respectively. The ultimate facts presented to the jury upon
which they might determine the priority of location are as
follows: That W. H. Ferguson and James Biddle located a
mining claim called the ''Nellie'' on December 20, 1879, who
also relocated the same ground on February 26, 1880, because
of some supposed defects in the location of December, 1879,
which claim, during the trial, was, for convenience, designated
as ''Ferguson's Nellie''; that one George V. Kell and Robert
K. Evans located the same ground on January 2, 1882, and
gave it the name of ''Nellie,'' under the supposition and
claim that the annual expenditure or representation work
had not been done upon the claim of Ferguson's Nellie in the
year 1881. This claim was likewise designated at the trial as
''Kell's Nellie.'' Ferguson, disregarding Kell's Nellie as a
valid location, and insisting that the annual expenditure on
Ferguson's Nellie had been made for the years 1880 and 1881,
and therefore it was not subject to relocation until 1883, lo-
cated the Copper Chief October 13, 1883, which substantially
covered the ground formerly located as Ferguson's Nellie,
and also located as Kell's Nellie, besides covering other and
more ground embraced in the Equator claim. Afterwards
Duke became the co-owner with Ferguson in the Copper Chief.
The appellants F. E. Jordan, E. A. Jordan, and W. A. Jor-
dan, disregarding the Copper Chief location, and holding that
the location of Kell's Nellie was a prior subsisting location to
the Copper Chief, and claiming that the annual expenditure
had not been made by Kell and the owners of Kell's Nellie
for the year 1883, went upon the ground January 1, 1884,
and made a location of the Equator claim. The defendant
Head afterwards purchased an interest in the Equator claim.

The relative locations of the Copper Chief and the Equator mining claims are shown on the accompanying diagram in deep black lines :—

It was admitted that the annual expenditure for 1883 had not been done on Kell's Nellie in the year 1883, but when the locators of the Equator claim arrived on the ground on the last day of December, 1883, they found the owners of Kell's Nellie on the ground also, and about ready to resume representation or annual expenditure work on their location of the Nellie. The owners of Kell's Nellie remained upon the ground for some six days, and did work thereon to the amount of about sixty dollars, when they quit and went away.

The prime question for the jury to solve was whether Ferguson's Nellie was a proper location in 1879 or 1880, and, being so, whether the annual expenditure had been made thereon for the year 1881, as required by the statutes of the United States. If those questions should be solved by the jury in favor of Ferguson's Nellie, it would follow that the ground was not open for relocation in 1882, and the location thereof by Kell and Evans on the second day of January, 1882, established for them no interests in the same. If Kell's location was void by reason of having been made at a time

when the ground was not open to location, then the Copper
Chief location of October 13, 1883, if properly made, would
have priority over the Equator location made January 1,
1884. If, however, the annual assessment-work had not been
done in 1881 on Ferguson's Nellie, the ground would have
been open to relocation January 2, 1882, when Kell made his
location; and if the annual expenditure for 1883 had not
been made thereon, or if the owners thereof had not resumed
work before the expiration of the year 1883, the ground would
have been open to location on January 1, 1884, when the
Jordans made a location of the Equator claim; and it would
then become material as to whether the owner of Kell's Nellie
had, in fact, resumed work upon that claim before the expira-
tion of the year 1883, and pursued it to a final completion, or
to the extent of one hundred dollars required by the statute.

The jury solved the question in favor of appellees, and in
favor of the Copper Chief claim, as follows: "We, the jury,
find the issues herein joined for the defendants; and we fur-
ther find that they have established a right and title to, and
are entitled to the possession and occupancy of, the premises
in controversy, by reason of full compliance with the acts of
Congress and the laws of the territory of Arizona relating
thereto." This verdict is in harmony with the instruction
given the jury by the court at the request of appellants, which
is as follows, to wit: "If you find that neither the said Nellie
location of December 20, 1879, nor the said Nellie location of
February 26, 1880, was a good and valid location, then you
are instructed that the ground covered by such attempted
locations was open to location and entry on January 2, 1882,
and that the same was subject to be relocated by any citizen
of the United States. And if you further find that on said
2d day of January, 1882, one G. V. Kell did make a valid
location of said ground, or any part thereof, which embraced
the ground in dispute in this action, then you are further
instructed that the attempted location on the same ground by
the defendant Ferguson in 1883, as the Copper Chief location,
was void. . . . So, then, if you find that the Nellie location of
1879 or of February 26, 1880, was valid, but that the same
became forfeited for the non-performance of annual work for
the years 1880 and 1881, and you further find that the Kell
location of the Nellie in 1882 was valid, then, and in that

Arizona 6—5

event, also, you will find that the Copper Chief location of the defendant Ferguson was void, so far as the ground in dispute in this action is concerned, for the reason that, if the Kell location of the Nellie in 1882 was valid, then the ground within the limits of that location was not subject to location or appropriation by another until after the expiration of the year 1883.'' The jury having resolved the facts in favor of appellees and the Copper Chief settles the rights to the disputed ground under the law, and the judgment rendered thereon must stand, unless there can be shown some error of the court in directing the issues, or the introduction or rejection of evidence, or the instructions to the jury. It is not pretended that there is not sufficient evidence to support the verdict of the jury. Therefore, nothing is before us to decide but the correctness of the rulings of the court during the trial of the cause, and of the instructions given to the jury or asked or refused.

2. Appellants have made numerous assignments of error and specifications under such assignments, some of which are insisted upon in the brief. An examination of all of them becomes unnecessary, inasmuch as the verdict of the jury was in support of the Copper Chief location. The jury were at liberty to have rendered one of three verdicts: First, for the appellants, supporting the Equator claim; second, for the appellees, supporting the Copper chief; and third, for the government, supporting neither the Equator nor the Copper Chief claims. Had the appellees, as defendants in the district court, gone to trial the second time, as they did the first time, upon a general denial only, the whole issue would have been only as to the validity of the Equator claim, and the right of the owners thereof to maintain the same against the government; but appellees having amended their answer, and set up a claim within themselves to the Copper Chief, the issue became then one between the Equator claim and the government, between the Copper Chief claim and the government, and between the Copper Chief claim and the Equator claim.

Much of the evidence in such contests is an aim by either party, first, to maintain his own right, or, failing in that, to destroy the right of his adversary, as against the government; and much of the evidence in this case given by both parties

and many instructions offered had relation to the destruction of the adversary's rights rather than to the maintenance of their own. Had the verdict of the jury been for the government, and that neither the plaintiffs nor defendants had established their rights or title to the ground in controversy, by reason of the fact that neither had complied with the acts of Congress and the laws of the territory, then it would have been necessary to have examined many of the errors complained of with reference to the introduction or rejection of the evidence and the instructions given and refused; then much of such evidence and instructions would have been pertinent to the issues as to whether the Equator was a valid location as against the location which was made by Kell and Evans, known as "Kell's Nellie."

One of the assignments insisted upon is that of permitting Schuerman to be added as a party defendant, and allowing him to introduce in evidence his amended location to the Copper Chief mining claim. We have not been able to see the necessity of adding Schuerman as a party. The cross-complaint could have been prosecuted and the action defended by Duke & Ferguson as well without as with him; or he might under the statutes of Arizona have been substituted for them. Paragraph 725 of the Revised Statutes of Arizona, after providing for the continuance of causes by or against the representative of deceased persons or their successor in interest, provides: "In case of any other transfer of interest, the action may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action." But how were the appellants affected by the action of the court in allowing Schuerman to be added as a party, and in what way were their interests prejudiced?

The jury, finding for the Copper Chief mining claim, necessarily found that Ferguson made a location of the Nellie mining claim in 1879 or 1880; that the annual assessment or representative work was done thereon in 1881; that the ground was not open to location at the time Kell undertook to make the location on January 2, 1882; and that consequently the Copper Chief claim being located in October, 1883, prior to the location of the Equator, in January, 1884, made the Copper Chief a subsisting and existing mining claim

from October 18, 1883. The only pretense that the appellants could make that they had been injured by the admission of Schuerman as a party was that which might result from the introduction of his amended location of the Copper Chief, made on the 31st of August, 1896. That amended location notice did not inaugurate any new rights. It had relation to the original location, made October 18, 1883. In the amended location notice Schuerman says "that it was originally located October 18, 1883, by Ferguson, and that he makes this further amended certificate of location without any waiver of any previous acquired rights by said original locator, but for the purpose of correcting any errors in the original location or description of record thereof." No serious contest was made by appellants to show that the Copper Chief claim was an invalid location in any other way or from any other reason than that the ground at the time the location was made was not open to location by virtue of the location of the Nellie claim by Kell and Evans in 1882. No special point is made by them that the acts performed by the locator were insufficient to make a location of a mining claim. They make no pretense that they were not aware of the location of the ground either by Ferguson or by Kell. Prior to the act of the legislative assembly of Arizona approved March 20, 1895, there was no penalty attached to a failure to record a location notice. The law of the territory prior to that time regulating the recording of location notices was in effect but a registration act. Location certificates recorded under it simply imparted constructive notice as any other registration act. So the amended location notice and certificate of location of Schuerman in August, 1896, gave him no new rights, and the introduction of it before the jury, although useless, was harmless.

3. Appellants assign as error the admission of the map and model in evidence. The map was prepared by an engineer (Powers) who was upon the ground and took the bearings and distances of certain monuments in relation to each other and to other objects, as they were pointed out to him by the locator Ferguson. From his field-notes he made the maps which were in evidence. Appellants insist that before a map can be admitted in evidence it must be proved to be correct. That is not always the case. If it is to be used in evidence as

a substantive and independent piece of evidence, the appel-
lants are correct, but if it is only to be used as an illustration
of what the witness details, no such proof is necessary; but in
this instance the maps were proven to be correct representa-
tions of the lines connecting the objects pointed out to the
surveyor by Ferguson. It is not necessary that the map
should be able to stand the tests of Ferguson's evidence as to
the particular monuments being the correct monuments of the
locations testified to by him. The maps were used in con-
nection with the evidence of witnesses that they might show
to the jury that which they were endeavoring by words to
explain; and being used for that purpose, the practice is too
common in *nisi prius* courts and too well-settled by appellate
courts to meet with anything but our approval.

4. Inasmuch as the jury rendered a verdict supporting the
Copper Chief claim, it will not be necessary for us to look into
the evidence in regard to the acts performed to make the loca-
tion of Kell's Nellie or the validity of that location certificate;
neither will it be necessary to discuss the acts of location of
the Equator or its certificate of location. The vast volume of
evidence, the vast number of instructions asked, and the mul-
titude of errors assigned, have relation to the conflict between
Kell's Nellie and the Equator, all of which would have been
important to have been considered had the verdict been in
favor of the government, as we have before indicated; but
appellants insist upon one class of errors with so much
strength that, probably, it will not be improper for us, if not
incumbent upon us, to give the matter some consideration,
and that is, as to the law of resumption of annual expenditure
or representation work on a claim before the year expires,
when the work has not been completed for that year, or, fur-
ther, where the work had not been attempted until the very
last day of the year, and at a time when the owners of a claim
about to be permitted to go derelict have entered upon the
ground to make the annual expenditure.

It is in evidence that on the last day of the year 1883 the
Jordans went upon the ground in dispute for the purpose of
being there early on the following morning to make a loca-
tion of the ground; that they there found some of the owners
of Kell's Nellie, who on that day did some little work, prob-
ably insignificant in amount, yet who declared at the time

that. they were there for the purpose of assuming possession of the mine and completing the work to represent it for the year 1883; that they did continue the work for five or six days following the last day of December, 1883, until they had made an expenditure on the Nellie to the amount of about sixty dollars, when they went away and never returned.

On the morning of January 1, 1884, and some time before eight o'clock on that day, the Jordans completed the monuments for the Equator and posted their notices, and did such acts, let us say without comment or investigation, as would give them a valid location to any unoccupied ground; and they now insist that the owners of the Nellie having abandoned their claim after they had performed only the amount of sixty dollars' worth of work, it became forfeited, and their location of the Equator related back to the 1st of January. We do not so understand the law. Since the case of *Belk* v. *Meagher,* 104 U. S. 279, and the multitude of cases following it, it has become a settled law that if the work be not completed on a mining claim in any part of the year in which the statute requires it to be done, but the owners thereof are upon the ground for the purpose of doing the work before the year expires, and then prosecute the work to completion, the work so prosecuted will have relation to the year in which it should have. been done, and that such resumption will prevent the claim from being forfeited. Such resumption effectually prevents it from becoming forfeited, and no forfeiture can take place until after there is a failure to prosecute the work, after the same has been resumed. It is also well settled that until a claim has been abandoned or has been forfeited, no other location can be made of the ground. The decisions go so far as to make it a settled law that if the first locator resumes work at any time, even after the expiration of the year, but before other rights attach in favor of relocators, he preserves his claim.

If this be the law, how can the appellants be heard to maintain that their location of the Equator is a valid one? By their own evidence, and by all the undisputed evidence in the case, had Kell's Nellie been a proper location, which the Equator people made strenuous efforts to prove, yet that claim (Kell's Nellie) did not become forfeited nor the ground become open to relocation, until after the owners had quit

work, at the expiration of the fifth or sixth day following the last day of December, 1883. There is no such thing as making a location of ground not open to relocation by reason of being already located, and then, because of failure on the part of the owners to support that claim either by abandonment or forfeiture, have the relocation relate back to the original act. In the location of mining claims there is no such thing as relation of acts, except such amendments as may take place in support of an original valid location. We would not be understood to say that a party, after once having resumed the work, can fitfully perform it, and pursue a portion of it at one time, quit and go away, and then come and resume again, so as to take all of the following year to do the work which was necessary to be done for the year previous. But we do say that having resumed work, they must pursue it to completion; and if they do not pursue it to completion, but leave the ground, it will then become forfeited, and not before. But if work is resumed before the expiration of the year, or before any interests have intervened, no forfeiture can occur until the work is abandoned. When owners resume work, they must perform all that it would have been necessary for them to have performed in the previous year, in order to prevent a forfeiture. Hence, under any view of this case, we cannot see how the appellants could have obtained a verdict from the jury or maintained their rights to the Equator claim against the government, or against any locators, whether it be of the Copper Chief or Kell's Nellie or Ferguson's Nellie. The judgment of the district court is affirmed.

Sloan, J., Doan, J., and Davis, J., concur.