[Civil No. 1220.   Filed September 28, 1912.]

[127 Pac. 739.]

FRED S. PEACHY, Appellant, v. O. D. M. GADDIS, J. H. ROSENBERG, as Administrator of the Estate of W. E. SAULS, Deceased, JOSHUA R. CLAIR, and Mrs. R. R. SAULS and JOHN L. SAULS, Heirs at Law of Said W. E. SAULS, Deceased, Appellees.

1. APPEAL AND ERROR—APPEAL BOND—PRESUMPTION AS TO APPROVAL. An appeal bond which came to the supreme court with the clerk's file-mark thereon, showing it to have been filed with him in due time, was sufficient, though the clerk's approval was not indorsed thereon, and did not otherwise appear in the record, especially where the bond was made by a surety company of unquestioned qualifications; it being presumed that the clerk did his duty, and approved the bond.

2. MINES AND MINERALS—ABANDONMENT OF CLAIM—RELOCATION NOTICE. An actual attempt to relocate the exact ground covered by the original mining location is such a showing of an intention not to abandon the mining ground as will not be overcome merely by a declaration in the relocation notices that the ground located is "abandoned ground," though such declaration may be some evidence of an intention to abandon.

3. MINES AND MINERALS — RELOCATION—DISCOVERY WORKINGS.—Under Laws of 1907, chapter 22, amending Civil Code of 1901, paragraph 3241, providing that the location of an abandoned or forfeited mining claim shall be in accordance with Civil Code of 1901; paragraph 3232, except that the relocator may perform his relocation work by sinking the original shaft ten feet deeper or extending the tunnel, and under paragraph 3235, as amended by Laws of 1903, No. 90, section 21, providing that failure to do such things shall work a forfeiture of the claim, the relocators of a mining claim could not legally adopt the discovery workings of the prior location, and an attempt to relocate by the adoption of such workings would be abortive.

4. MINES AND MINERALS—ABANDONMENT—ABORTIVE RELOCATION.—An abortive attempt to relocate a mining claim did not work any forfeiture of the rights under the original locations, which could avail a third party attempting to locate the same ground several years after the claimants under the original locations had resumed work on the claims, where it did not appear that the resumption of work was not in good faith, or that it was not prosecuted to the extent required by law.

APPEAL from a judgment of the District Court of the Fourth Judicial District, in and for the County of Mohave. Edward M. Doe, Judge. Affirmed.

STATEMENT OF FACTS BY THE COURT.

This is an action to quiet title to certain mining claims. Peachy was the plaintiff, and Gaddis and others were defendants below. The complaint alleges that on November 23, 1903, the predecessors in interest of Gaddis and Sauls located the "Upright," "Equator," "Lookout," "North Thumb Butte," "East Side," "Wedge," and "West Side" lode mining claims in San Francisco mining district, Mohave county, Arizona; that thereafter by mesne conveyance Gaddis and Sauls became the owners; that they did the annual assessment or representation work and improvement on all of said mining claims up to and including the year 1906; that in 1907 no work or improvements were done or made; that by virtue of the failure to make the annual expenditure all of said mining claims became subject to relocation on and after January 1, 1908, by any qualified person, except Gaddis and Sauls; that, notwithstanding the premises, Gaddis and Sauls on January 1, 1908, made or pretended to make a relocation of said mining claims under different names by adopting the boundaries, the discovery, and discovery shafts of the old locations; that all of said relocation notices contained "the solemn declaration that the same was abandoned ground"; that all of said notices of location were recorded with the county recorder of Mohave county, Arizona, on March 12, 1908. Then follows an allegation that, Gaddis and Sauls having recorded their solemn declaration of abandonment of said claims, the same reverted to the public domain as fully and completely as if they had never been duly or otherwise located; then Gaddis and Sauls on August 2, 1909, gave a working lease with an option to purchase said mining claims for the sum of $150,000 to defendant Joshua R. Clair; that Clair thereafter took possession of the mining claims and premises under the last locations; and continued in possession and was engaged in mining, developing, and exploiting said mines and erecting a mill thereon for the purpose of treating and reducing the ores therein.

That on September 28, 1910, plaintiff entered into and upon said premises . . . the same being then and there a part and

parcel of the unappropriated public domain, and did attempt to locate a part of the said premises, by erecting three location notices for the Washington, John Q. Adams, and Abraham Lincoln lode mining claims, and began the work of perfecting said locations by measuring boundaries of said claims and placing monuments thereon; that while so engaged he and his assistants were forcibly prevented from continuing work of survey and monumenting by Clair, through his employees, by threats of violence compelling plaintiff to leave the premises; that on October 1, 1910, he caused notices of location of the Washington, John Q. Adams, and Abraham Lincoln claims to be recorded; that notices were posted at the discovery point and points, and that at each of said points on each of said claims there was developed a well-defined vein or crevice in rock in place carrying gold and other precious metals, and that he placed discovery notice in each discovery monument; that he wants to do other necessary acts of location, but the defendants threaten him with violence, and he fears that the violence might extend to the taking of his life if he goes on the ground; that the premises are of the value of $500,000, and that defendants intend as soon as the mill is completed to extract and mill the ores, to his damage, etc.

Mr. William M. Seabury, Mr. George D. Christy, and Mr. Ross H. Blakely, for Appellant.

Messrs. Clark, Haworth & Stewart, and Messrs. Kibbey, Bennett & Bennett, for Appellees.

ROSS, J.—Before considering the case on its merits, it is necessary to examine its *status* in this court. The territorial supreme court dismissed the appeal on appellees' motion, for the reason that the clerk of the trial court had failed to indorse on the appeal bond his approval thereof. At the incoming of the state supreme court the case was pending on a motion by appellant to reinstate. This motion was based on the files in the record and an affidavit of one of the attorneys for appellant which attacked the correctness of the files. Counter-affidavits were also filed. All the affidavits on the court's motion were stricken. The appeal bond was a surety company bond and was sufficient in substance and form. It was filed with the court in time, but there was no approval

thereof indorsed thereon or otherwise appearing in the record. The territorial supreme court deemed the clerk's omission to indorse his approval on the bond fatal to its validity, and, as before said, dismissed the appeal for that reason.

With that court's conclusion we cannot agree. The bond having come to this court with other papers in the case, with the filing mark of the clerk thereon, showing that it was lodged with him in proper time, in the absence of a contrary showing, the presumption is that the clerk did his duty and approved the bond. This we think is especially true when the bond offered and filed is a surety bond by a company whose qualifications to execute it are unquestioned, as in this case. The failure on the part of the clerk to perform the mere clerical act of indorsing his approval on the bond ought not to be allowed to defeat the appellant's appeal. The oversight or neglect of the clerk should not be visited on the appellant, who has no power or right to superintend or control his action. Our appeal bond statute was taken from Texas, and is essentially the same. The construction given by the Texas courts is in line with what we have said. In *McLane* v. *Russell,* 29 Tex. 128, 129, the court said: "We have held that, where an appeal bond appears in the record indorsed with the proper file-mark of the clerk, we will presume his approval, although it does not expressly appear to have been approved; and that, when such a bond is properly approved by the clerk, we will presume its proper filing, although the indorsement of the filing is not on it. In each of these cases the official act of the clerk, which appears in the record, necessarily includes the existence and verity of the other, which does not appear, and shows conclusively that its nonappearance is attributable to a mere clerical oversight or omission": *Evans* v. *Pigg,* 28 Tex. 587; *Rodgers* v. *Ferguson,* 32 Tex. 534.

On the merits the sufficiency of the complaint to state a cause of action is the only question. The appellant contends that the facts set forth in his complaint clearly show an abandonment of the mining claims by the defendants Gaddis and Sauls on December 31, 1907, and to sustain that position he relies upon the allegations to the effect that Gaddis and Sauls in their notices of relocation dated January 1, 1908, "solemnly declared" that ground located was "abandoned

ground.'' This statement was written in the body of the notices of relocation, and may be taken as some evidence of an intention to abandon the mining claims. Prior to March 12, 1907, the law required a relocator to state in his notice of relocation, ''if the whole or any part of the new location is located as abandoned property, else it shall be void'' (Laws 1907, c. 22, p. 27), and, while it was unnecessary to make such statement in a relocation made in January, 1908, it may reasonably be assumed, in connection with their efforts to. hold the ground by relocating it, that they thought such a statement necessary. ''To constitute abandonment in respect to property, there must be a concurrence of the intention to abandon and an actual relinquishment of the property, so that it may be appropriated by the next comer.'' 1 Cyc. 4. ''In determining whether one has abandoned his property or rights, the intention is the first and paramount object of inquiry; for there can be no abandonment without the intention to abandon.'' 1 Cyc. 5; *Myers* v. *Spooner,* 55 Cal. 257; *Richardson* v. *McNulty,* 24 Cal. 339.

While the complaint shows that no representation work or improvements were made by Gaddis and Sauls in 1907, it also shows that on January 1st they went upon the ground, and attempted to relocate the exact ground covered by the original locations, thus, in a most convincing way, showing a disposition not to abandon the mining ground they and their predecessors had possessed and worked in 1903. The complaint therefore fails to show an abandonment by Gaddis and Sauls.

The appellant also insists that notwithstanding Gaddis and Sauls and their lessee, Clair, had possession of the mines, working and developing them during 1908, 1909 and 1910, their relocations of January 1, 1908, amounted to abandonment and subjected the ground to forfeiture, and that such forfeiture took effect on September 28, 1910, when he went upon the ground and began his location of same. He contends that Gaddis and Sauls' failure to do annual assessment work for 1907 left the ground open to location by anybody and everybody, except Gaddis and Sauls, and that the relocation by the latter was a location of ground already appropriated by their former locations, and therefore void. The allegations in the complaint of the acts done by Gaddis and Sauls in making or attempting to make the relocations are

(and this same allegation, in effect, is repeated as to each location) : "that the said Sauls and Gaddis did also on said first day of January, A. D. 1908, pretend and attempt to locate as the 'Dip' lode mining claim all those premises and real estate then included and embraced within the descriptive exterior boundary stakes of the said East Side lode mining claim; that the said Sauls and Gaddis, in making the location of the said Dip lode mining claim, adopted the monuments, boundaries, and description, and the discovery and discovery workings of the said East Side lode mining claim, and under their signatures the location certificate thereof declared the same to be the abandoned ground of the said East Side lode mining claim, the location certificate of which said Dip lode mining claim was, by the said defendant Gaddis, on the twelfth day of March, A. D. 1908, duly recorded in the records of said county of Mohave, in Book AA, at page 113."

Construing the complaint in the most favorable light to the appellant, the facts he states as done by Gaddis and Sauls would not constitute a valid location. If Gaddis and Sauls "adopted the monuments, boundaries and description, and the discovery and discovery workings of the East Side lode," their effort to relocate was abortive. Granting that they could legally adopt the "monuments, boundaries and description and the discovery" of the prior location, certainly under no circumstances could they adopt the "discovery workings." Chapter 22, Laws 1907, amending paragraph 3241, is: " . . . The location of an abandoned or forfeited claim shall be made in accordance with the provisions of paragraph 3232 (sec. 2), title 47, chapter xlvii of the Revised Statutes of Arizona, 1901, except that the relocator may, if he so elect, perform his location work by sinking the original location shaft ten feet deeper than it was originally, or in case the original location work consisted of a tunnel or open cut, he may perform his location work by extending said tunnel or open cut by removing therefrom 240 cubic feet of rock or vein material." Paragraph 3235, Revised Statutes of 1901, as amended by section 21 of Act No. 90 of the Laws of 1903, is: "The failure to do all the things enumerated in the proceedings section (preceding sections) in the time and place specified shall be construed into an abandonment of the claim, and all right and claim thereto of the discoverer and locator shall be forfeited."

Clearly, according to the allegations of the complaint, no discovery work was done by Gaddis and Sauls under the new locations, and any attempt by them to acquire the ground by virtue of relocations must "be construed into an abandonment of the claim, and all right and claim thereto" was forfeited so far as attempted to be acquired under such relocations. In other words, according to the allegations of the complaint, they failed to do all the acts and things necessary to constitute a valid location, and therefore acquired no rights thereby. The abortive attempt to relocate, however, under the facts of this case, did not work a forfeiture or amount to an abandonment of their rights under the original locations. The complaint is silent as to the amount of work or improvements that was done or placed on the mining claims during the years 1908, 1909, and 1910 by Gaddis and Sauls and their lessee Clair, but it does allege that at the time he attempted to make his locations they were operating the mines and had a mill for reducing the ores thereof in course of construction. It is shown that defendants had resumed work on the claims long prior to any attempt on the part of the appellant to initiate any rights to the ground in controversy.

Resumption of work, in good faith, before any rights of third parties accrue, is sufficient to prevent a forfeiture, and this regardless of the amount of expenditure, providing the work is prosecuted to the maximum requirement of the law. In this case it is fairly inferable that the defendants had expended large sums of money during 1908, 1909 and 1910, and far in excess of the annual representation work. "The fact that a mining locator has failed for one year to perform the annual labor required by act of Congress of May 10, 1872, does not work a forfeiture of the claim, where he in good faith resumes the work before a new location is made by others." *Lacey* v. *Woodward,* 5 N. M. 583, 25 Pac. 785; *Belk* v. *Meagher,* 104 U. S. 282, 26 L. Ed. 735; *Swanson* v. *Sears,* 224 U. S. 180, 56 L. Ed. 721, 32 Sup. Ct. Rep. 455, decided April, 1912. "Neither is there any evidence that the claim of defendants was ever abandoned after the first location in 1891. The attempted relocation in 1896 was invalid, and did not amount to an abandonment of the previous location, and, so far as plaintiff is concerned, that location of 1896 is entirely immaterial, as its claim was not

located until 1900. The work which was done by defendants in 1898, 1899, and 1900 will be attributed to the location of 1891, the only previous location which was valid." *Temescal Oil etc. Co.* v. *Salcido et al.*, 137 Cal. 211, 69 Pac. 1010. We hold, therefore, that the complaint shows there was no abandonment of the claims as initiated in 1903, and the defendants remaining in possession, working and developing the claims after the attempted relocation, there was no forfeiture. At the time the appellant went on to the ground to locate it it was legally in the possession and occupancy of the defendants, and the appellant was a trespasser and acquired no rights. The demurrer was properly sustained.

Judgment of the lower court is affirmed.

FRANKLIN, C. J., and CUNNINGHAM, J., concur.

Application for rehearing denied.

---

NOTE.—The authorities on the question of the relocation of a mining claim as abandoned or forfeited are collated in a note in 68 L. R. A. 833.

As to the abandonment and forfeiture of mining claims, see note in 87 Am. St. Rep. 403.

As to the discovery of mineral in mining claims and the rights of locators prior thereto, see note in 139 Am. St. Rep. 154.

As to the sufficiency of the discovery of mineral to support a location of a claim, see note in 15 Ann. Cas. 628.