[Civil No. 3158. Filed May 31, 1932.]

[11 Pac. (2d) 854.]

HARTMAN GOLD MINING COMPANY, a Corporation, Appellant, v. FRANK WARNING, CYRIL WIGMORE and C. O. SANFORD, Appellees.

Mr. Louis L. Wallace and Mr. Carl D. Hammond, for Appellant.

Mr. E. Elmo Bollinger and Mr. Fred W. Morrison, for Appellees.

LOCKWOOD, J.—Frank Warning, Cyril Wigmore and C. O. Sanford, hereinafter called plaintiffs, brought suit against Hartman Gold Mining Company, a corporation, hereinafter called defendant, to quiet title to the Big Jim Extension Mining Claim in Mohave county. Defendant filed various motions and demurrers, answered, and then cross-complained, asking to quiet its title to the North Aztec mining claim, covering the identical ground claimed as the Big Jim Extension in plaintiffs' complaint.

The case was tried before the court without a jury, and judgment rendered in favor of plaintiffs, and, after the usual motion for new trial had been denied, the case was brought before us for review.

With one or two exceptions, there is very little dispute as to the facts necessary for the determination of the case, and we state them as follows: In 1908 George Hartman and E. Baird located the North Aztec mining claim. By various intermediate con-

veyances their interest was acquired by the Oatman Gold Mining & Milling Company, a corporation, hereinafter called the company. This company also owned eleven other mining claims in a group adjacent to the North Aztec, eight of them being patented, and four, among which was the North Aztec, being unpatented.

The annual labor necessary to retain the company's interest in the North Aztec was duly performed, or else affidavit filed in lieu thereof, up to and including the year 1925, but no work was done during the years 1926, 1927, and 1928, and in 1927 the manager for the company attempted to relocate the ground covered by the North Aztec under the name of Semloh, but this location was never completed.

During the year 1927 various creditors of the company brought suit against it and filed liens on the twelve claims above referred to. Judgment was recovered on some of these accounts, and the sheriff of Mohave county, in pursuance of the judgment, sold the twelve claims as a group to L. L. Wallace, who on March 15th, 1929, deeded them to the defendant herein.

Between May 2nd and September 1st, 1929, a large amount of labor was performed by defendant on certain claims included in the above group, being amply sufficient, if legally applicable to annual labor on the North Aztec claim, to more than comply with the law.

On September 1, 1929, Frank Warning, one of the plaintiffs herein, attempted to relocate the ground formerly known as the North Aztec under the name of Big Jim Extension Mining Claim, and this is the cause of the present suit.

There are many specific assignments of error, but we prefer to consider the case rather from the stand-

point of the general legal questions involved. There is no dispute that up to the year 1926 the Oatman Gold Mining Company was the owner of the North Aztec claim. It is the contention of plaintiffs that by failure to do the annual assessment work during the years 1926, 1927 and 1928 the company's interest in the claim in question was forfeited, and on September 1, 1929, it was open government ground subject to relocation. It is the position of defendant that, notwithstanding the failure on the part of the company, as aforesaid, to do the work for the years 1926, 1927 and 1928, its interest in the North Aztec claim passed to defendant by reason of the sheriff's sale and deed, as aforesaid, and that, before plaintiff attempted to initiate his location of the Big Jim Extension, defendant, as the company's assignee, had resumed work on the North Aztec claim, so that on September 1, 1929, it was not subject to relocation.

What are the rules of law applicable to the situation above outlined? The federal statute governing mining locations provides that, after a valid location is made, the locator must place upon the claim not less than $100 worth of labor and improvements each year until a patent is issued. 17 U. S. Stats. at Large 92, chap. 152, § 5, as amended by 21 U. S. Stats. at Large 61, chap. 9, § 2 (30 U. S. C. A., § 28). It is admitted that this was not done during the years 1926, 1927 and 1928. What, then, is the effect of such failure? It is held that a mere failure to comply with this law does not of itself terminate the locator's rights. *Madison* v. *Octave Oil Co.,* 154 Cal. 768, 99 Pac. 176. Its only effect is to throw the land open to location by others, and, unless the forfeiture is made complete and effectual by a relocation, the original locator, his heirs or assigns, have a right to resume work and thereby hold the claim. *Peachy* v. *Gaddis,* 14 Ariz. 214, 127 Pac. 739;

*Jordan* v. *Duke*, 6 Ariz. 55, 53 Pac. 197; *Belk* v. *Meagher*, 104 U. S. 279, 26 L. Ed. 735. And this may be done at any time before rights have attached under a complete and valid relocation by another. *Lakin* v. *Sierra Buttes Gold Mining Co.*, (C. C.) 25 Fed. 337, 11 Sawy. 231; *Emerson* v. *McWhirter*, 133 Cal. 510, 65 Pac. 1036.

If, therefore, the Oatman Gold Mining & Milling Company, or its assigns, resumed work on the North Aztec claim before September 1, 1929, the ground was not subject to relocation by plaintiffs.

Was the defendant as a matter of law an "assign" of the Oatman Gold Mining & Milling Company? This depends upon whether at the time the levy and sale in question was made the company had any interest in the North Aztec claim subject to levy. Our execution statute is extremely broad, and under it any interest, legal or equitable, in either real or personal property, is subject to execution. Paragraph 1363, Rev. Stats. Ariz. 1913 (Civ. Code).

In view of the fact that the company had at the time of the sheriff's sale the right to resume work and thus protect its interest in the North Aztec, and the rule that the failure to comply with the law regarding annual labor does not of itself terminate the locator's rights, we are of the opinion that it had an interest subject to execution, and that such interest passed to defendant by the various conveyances in question, so that it was as a matter of law an "assign" of the company and entitled to resume work as aforesaid.

It is also suggested that the action of the company's superintendent in attempting to relocate the North Aztec ground as the Semloh showed that there was an abandonment of the North Aztec location, and that, if a claim is abandoned instead of merely forfeited, there can be no resumption. It is true one

who abandons a mining claim has no right to reacquire any interest therein by a resumption of work, but we have held an attempted relocation not only does not show abandonment, but negatives it. *Peachy* v. *Gaddis, supra.*

The next question for our consideration is whether or not as a matter of fact defendant did do such work as under the law would be considered a resumption of labor on or for the North Aztec claim. The trial court by its findings and conclusions of law apparently took the view that the failure to do the labor in any particular year automatically divested the original locator of all interest in the claim, so that it had nothing which would pass by sale under execution. This, as we have indicated, is not the law. The effect of the failure to do the work is to make it possible for another person to relocate the property, but, until such relocation, the original locator and his assigns are entitled to the possession of the premises as against all persons but the United States, and have an interest therein, together with a right to bar relocation by a resumption of work. The judgment therefore cannot be sustained on the ground that the sheriff's sale passed nothing to defendant.

The trial court naturally, with its view of the law, made no findings on the question of whether or not the work admittedly performed by defendant on the group acquired by it through the sheriff's sale as aforesaid was of such a nature that it would be legally applicable to the annual labor required for the North Aztec claim. It is not contended by anyone that any labor was performed during the year 1929 upon the North Aztec claim itself, but it is urged by defendant that the work which it admittedly did on certain other claims of the group in question was of such a nature that it would be so legally applicable. It is the law that, where a group

of several contiguous claims are owned and operated as one, they will be treated as an entirety, and the aggregate assessment work for all of the claims may be done upon any one of them, provided it is of benefit to all the claims and tends to develop all of them, and to facilitate the extraction of ore therefrom. *Chambers* v. *Harrington,* 111 U. S. 350, 28 L. Ed. 452, 4 Sup. Ct. Rep. 428; *Merced Oil Min. Co.* v. *Patterson,* 162 Cal. 358, 122 Pac. 950; *McDonald* v. *McDonald,* 16 Ariz. 103, 144 Pac. 950.

There is no doubt that the twelve claims in question were always considered as an entirety, and that they are of such a nature that the rule above cited would be applied to them.

There is a serious question, however, as to whether or not the work done, as shown by the record, is of such a nature that it falls within the rule, and this is a matter of fact which we think should be determined by the trial court. It is not necessary, therefore, for us in disposing of the case to consider the point raised by defendant that, even assuming the ground in question was subject to relocation, the evidence does not show that plaintiff made a valid relocation. The judgment of the superior court of Mohave county is reversed and the case remanded for a new trial in accordance with the principles set forth in this opinion.

McALISTER, C. J., and ROSS, J., concur.